**UNITED STATES of America**

v.

**Nicholas PALUMBO, Appellant.**

**No. 79–1701.**

United States Court of Appeals,
Third Circuit.

Argued Oct. 10, 1979.

Decided Oct. 31, 1979.

---

Robert J. Del Tufo, U. S. Atty., Ralph A. Jacobs (argued), Asst. U. S. Atty., Newark, N. J., for appellee.

Andrew H. Marshall (argued), Henry & Marshall, Athens, Ga., for appellant.

Before ADAMS, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM.

This is an appeal from a denial by the district court of a motion by Nicholas Palumbo, a federal prisoner, for collateral relief under 28 U.S.C. § 2255 (1976).[1] Palum-

---

1. 28 U.S.C. § 2255 (1976) provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion for such relief may be made at any time.

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

The sentencing courts shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this

bo contends that the indictment under which he was charged and convicted incorrectly stated that the drug Percodan [2] is a Schedule II controlled substance within the meaning of 21 U.S.C. § 812(c) and 21 C.F.R. § 1308.12 (1976).[3] The district court declined to address the merits of this contention, holding that Palumbo was barred from relitigating the issue because it had been fully adjudicated at Palumbo's trial and on direct appeal to this Court.

Palumbo also contends that he was denied his Sixth Amendment right to effective assistance of counsel at his trial and on his direct appeal because his attorney failed to argue that the indictment was deficient inasmuch as it incorrectly stated that Percodan was a Schedule II substance. The district court rejected this claim, holding that the record demonstrated that Palumbo's counsel professionally and competently presented the deficiency issue. After considering both of Palumbo's contentions, we affirm the decision of the district court.

## I.

Palumbo and six codefendants were charged in a five count indictment with conspiracy to possess Percodan with intent to distribute and conspiracy to distribute Percodan in violation of 21 U.S.C. § 846(a) (1976),[4] and with distribution of Percodan in

---

section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

2. Percodan is a registered trademark for a general analgesic manufactured by Endo Products, Inc. Percodan is composed of four chemical components: aspirin (224 mg.), caffeine (32 mg.), phenacetin (160 mg.), and oxycodone (4.5 mg.).

3. In 1970, Congress established a classification system to regulate the use and distribution of controlled narcotic substances. *See* 21 U.S.C. § 801 (1976). Section 812(b) sets forth five classes of controlled substances:

(1) Schedule I.
(A) The drug or other substance has a high potential for abuse.
(B) The drug or other substance has no currently accepted medical use in treatment in the United States.
(C) There is a lack of accepted safety for use of the drug or other substance under medical supervision.
(2) Schedule II.
(A) The drug or other substance has a high potential for abuse.
(B) The drug or other substance has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions.
(C) Abuse of the drug or other substances may lead to severe psychological or physical dependence.
(3) Schedule III.
(A) The drug or other substance has a potential for abuse less than the drugs or other substances in schedules I and II.
(B) The drug or other substance has a currently accepted medical use in treatment in the United States.

(C) Abuse of the drug or other substance may lead to moderate or low physical dependence or high psychological dependence.
(4) Schedule IV.
(A) The drug or other substance has a low potential for abuse relative to the drugs or other substances in schedule III.
(B) The drug or other substance has a currently accepted medical use in treatment in the United States.
(C) Abuse of the drug or other substance may lead to limited physical dependence or psychological dependence relative to the drugs or other substances in schedule III.
(5) Schedule V.
(A) The drug or other substance has a low potential for abuse relative to the drugs or other substances in schedule IV.
(B) The drug or other substance has a currently accepted medical use in treatment in the United States.
(C) Abuse of the drug or other substance may lead to limited physical dependence or psychological dependence relative to the drugs or other substances in schedule IV.
The substances contained in Schedule II are set forth in 21 U.S.C. § 812(c) (1976) and in 21 C.F.R. § 1308.12 (1976).
The schedules only list chemical components. Accordingly, drugs are classified according to their chemical composition; brand names of drugs do not appear in either the Code or the Regulations. Oxycodone, a component of Percodan, is listed as a Schedule II substance.

4. 21 U.S.C. § 846(a) (1976) provides:
Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

violation of 21 U.S.C. § 841(a)(1) (1976).[5] A jury found Palumbo guilty of conspiracy, but acquitted him on the four substantive counts. The trial judge sentenced him to fifteen years in prison, followed by three years of special parole. Palumbo appealed the judgment of conviction, and a panel of this Court affirmed by judgment order. *United States v. Palumbo*, 568 F.2d 771 (3d Cir.), *cert. denied*, 436 U.S. 926, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978).

At trial and on appeal, Palumbo's counsel contended that the indictment incorrectly alleged that Percodan was a Schedule II substance. After attempting to establish that the chemical composition of Percodan placed it in the Schedule III category,[6] Palumbo argued that trial for possession and conspiracy to possess Percodan would amount to an unconstitutional amendment of the indictment.[7] The defense asserted that Palumbo, in effect, would be tried for possession of a Schedule III substance, but indicted for a different crime—possession of a Schedule II substance.[8] After listening to a chemist employed by the Drug Enforcement Administration testify that Percodan contains oxycodone, a Schedule II substance,[9] the district judge held, as a matter

of law, that Percodan was a Schedule II narcotic.

On his direct appeal, Palumbo challenged the district court's determination and again asserted that the trial judge had unconstitutionally amended the indictment by instructing the jury that Percodan was a Schedule II substance.[10] This Court rejected Palumbo's contention and affirmed the judgment of conviction.

## II.

■ Palumbo claims on the present appeal, as he did in the § 2255 hearing in the district court, that the indictment was deficient because it incorrectly stated that Percodan is a Schedule II substance. As we have just indicated, the question whether Percodan is a Schedule II narcotic was adjudicated at Palumbo's trial and by a panel of this Court on his direct appeal. Because Palumbo has received a full hearing by the federal courts on this legal issue, we hold that, on the facts present here, the district court did not err in declining to consider again the question in the § 2255 hearing.

The Supreme Court has recognized two purposes underlying federal habeas corpus review.[11] First, "[t]he provision of federal

---

**5.** 21 U.S.C. § 841(a)(1) (1976) provides:
   Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
      (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
      (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

**6.** *See* note 3 *supra*.

**7.** *See Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), in which the Supreme Court reversed the defendant's conviction because the indictment charged interference with interstate commerce by importing sand into Pennsylvania, while the evidence showed not only importation of sand, but also exportation of steel. The Court held that the trial judge had usurped the grand jury's function by instructing the petit jury that the defendant could be convicted of the uncharged crime of steel exportation. It was impossible to say with certainty, the Court concluded, "that with a new basis for conviction added,

Stirone was convicted solely on the charge made in the indictment the grand jury returned." *Id.* at 217, 80 S.Ct. at 273.

**8.** App. 33a–37a.

**9.** *See* notes 2 & 3 *supra*.

**10.** Brief for appellant, *United States v. Palumbo,* 568 F.2d 771 (3d Cir. 1978), at 25–33.

**11.** The federal habeas corpus statutes are codified in 28 U.S.C. §§ 2241–2256 (1976). Section 2255, *see* note 1 *supra*, requires persons in federal custody who are seeking collateral relief to move the sentencing court to vacate, set aside, or correct the sentence. Congress passed this statute in 1948, Act of June 25, 1948, Pub.L. No. 773, 62 Stat. 967, in order to relieve the United States District Courts for the districts in which federal prisons were located of the burden of hearing all habeas corpus petitions. The statute was intended to afford a remedy as broad as habeas corpus. *United States v. Hayman*, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952).

collateral remedies rests . . . fundamentally upon a recognition that adequate protection of constitutional rights relating to the criminal trial process requires the continuing availability of a mechanism for relief." *Kaufman v. United States*, 394 U.S. 217, 226, 89 S.Ct. 1068, 1074, 22 L.Ed.2d 227 (1969). Second, federal collateral review affords persons in custody "[t]he opportunity to assert federal rights in a federal forum." *Id.* "The right then is not merely to a federal forum but to full and fair consideration of constitutional claims." *Id.* at 228, 89 S.Ct. at 1075.

Palumbo has had a full and fair hearing in two federal tribunals—the district court and the court of appeals—of his Fifth Amendment claim that the proof introduced at trial varied substantially from the terms of the indictment. The record and briefs from his original appeal demonstrate that his attorney vigorously argued his constitutional claim. A panel of this Court heard and decided his contentions. Palumbo has already received the benefit of federal judicial review of his constitutional claims. To permit relitigation here of the issues previously decided by this Court, therefore, would not further the purposes of § 2255 and would result in wasteful duplication of the federal judicial review process.[12]

■ Accordingly, we hold that, in the absence of newly discovered evidence that could not reasonably have been presented at the original trial,[13] a change in applicable law,[14] incompetent prior representation by counsel,[15] or other circumstances indicating that an accused did not receive full and fair consideration of his federal constitutional and statutory claims, a § 2255 petitioner may not relitigate issues that were adjudicated at his original trial and on direct appeal.[16] Because none of the four exceptions is present here, we conclude that the district court did not err in declining to address once again Palumbo's Fifth Amendment claim in the § 2255 proceeding.[17]

### III.

■ Palumbo's second contention is that he should be released from custody and

---

**12.** *See* Amsterdam, *Search, Seizure, and Section 2255: A Comment*, 112 U.Pa.L.Rev. 378, 380–81 (1964) (citations omitted):

> The federal accused, unlike the state accused, is given a federal forum from the start. He may litigate his constitutional contention to a federal trier, take a direct appeal to a federal court of appeals; if he does and loses on the merits, there is no reason (absent a botched presentation by counsel or a claim of new evidence) to allow relitigation collaterally. *See also Developments in the Law—Federal Habeas Corpus*, 83 Harv.L.Rev. 1038, 1064–66 (1970).

**13.** *See Morgan v. United States*, 438 F.2d 291 (5th Cir. 1971) (per curiam). Cf. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (habeas corpus from state custody).

**14.** *See Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974).

**15.** We also conclude that Palumbo was not denied effective assistance of counsel. *See* part III *infra*.

**16.** Today's decision is in accord with the law of every court of appeals that has addressed the issue. *United States v. Currie*, 589 F.2d 993, 994–95 (9th Cir. 1979); *Vernell v. United States*, 559 F.2d 963, 964 (5th Cir. 1977) (per curiam), *cert. denied*, 435 U.S. 1007, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978); *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir.) (per curiam), *cert. denied*, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir.) (per curiam), *cert. denied*, 429 U.S. 863, 97 S.Ct. 169, 50 L.Ed.2d 142 (1976); *Levine v. United States*, 430 F.2d 641, 642–63 (7th Cir. 1970), *cert. denied*, 401 U.S. 949, 91 S.Ct. 962, 28 L.Ed.2d 232 (1971); *United States v. Osborn*, 415 F.2d 1021, 1023 (6th Cir. 1969) (en banc), *cert. denied*, 396 U.S. 1015, 90 S.Ct. 567, 24 L.Ed.2d 506 (1970); *Vincent v. United States*, 361 F.2d 474, 476 (8th Cir.), *cert. denied*, 385 U.S. 993, 87 S.Ct. 606, 17 L.Ed.2d 452 (1966). *See also Henkel v. United States*, 367 F.Supp. 1144, 1145 (W.D.Pa.1973).

**17.** Even if Palumbo were permitted to relitigate the issue whether Percodan is a Schedule II substance, it is doubtful that he could prevail. The leading pharmacy reference, *Facts and Comparisons*, lists Percodan as a Schedule II substance. Facts and Comparisons 251b (E. Kasperup & J. Boyd eds. 1979). Moreover, it is not denied that, as indicated in footnote 3 *supra*, oxycodone—the most potent ingredient of Percodan—is listed as a Schedule II chemical compound.

granted a new trial because he did not receive effective assistance of counsel at his original trial and on his direct appeal. He maintains here that his attorney failed to argue that the proof varied substantially from the terms of the indictment because Percodan is, in fact, a Schedule III substance, while the indictment alleged conspiracy and possession of a Schedule II substance.

We have reviewed both the trial transcript as well as the briefs submitted by Palumbo on his direct appeal and agree with the district court that Palumbo received competent and professional legal assistance. His attorney attempted to establish that the presence of oxycodone does not make Percodan a Schedule II substance and asserted that the proof of possession of Percodan therefore varied from the terms of the indictment.[18] In our view, Palumbo's counsel at his original trial and on appeal argued this issue vigorously, professionally, and, indeed, in much the same manner as did his attorney on this appeal. Because we conclude that Palumbo's original counsel exercised "the customary skill and knowledge which normally prevaile[d] at the same time and place" of his original trial and appeal[19]—the standard for measuring effective assistance of counsel claims—the judgment of the district court will be affirmed.

---

**18.** *See* App. 33a–49a; Brief for Appellant, *United States v. Palumbo*, 568 F.2d 771 (3d Cir. 1978), at 25–33.

**19.** *Moore v. United States*, 432 F.2d 730 (3d Cir. 1970) (en banc).