**UNITED STATES of America**

v.

**Robert Dennis SWINEHART, Appellant.**

**No. 79–1934.**

United States Court of Appeals, Third Circuit.

Argued Dec. 11, 1979.

Decided Feb. 28, 1980.

As Amended March 18 and 26, 1980.

John J. Duffy (Argued), Brian Ross Hauser, Carroll, Creamer, Carroll & Duffy, Philadelphia, Pa., for appellant.

Peter F. Vaira, U. S. Atty., Philadelphia, Pa., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Philadelphia, Pa., Donald A. Purdy, Jr. (Argued), Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before ADAMS, ROSENN and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

The appellant, Robert Swinehart, was convicted by a jury of conspiracy to defraud the United States by uttering stolen savings bonds, aiding and abetting the uttering of ninety-four savings bonds, and thirteen

counts of forgery.[1] In his appeal, Swinehart alleges that he was prejudiced by certain remarks made by the prosecutor during closing argument and that he had not received effective assistance of counsel at trial. He asks us to order the district court to grant a new trial because of prejudicial comments by the prosecution, or to remand for an evidentiary hearing on the ineffective assistance of counsel claim. We reject these contentions and affirm.

## I. FACTUAL BACKGROUND

Testimony at trial established the following facts: On January 21, 1977, 107 United States Savings Bonds were stolen from the home of LeRoy Johnston of Phoenix, Arizona. On April 15, a woman identifying herself as "Shirley Johnston" presented 94 of these bonds, fully endorsed, to the First Farmers Bank of Lancaster, Pennsylvania and used them to open an account. Three days later, the thirteen remaining bonds, bearing the signature "LeRoy Johnston," were deposited into the account. LeRoy Johnston testified that he had never endorsed the bonds, and a handwriting expert called by the government testified that the signatures on the thirteen bonds matched Swinehart's handwriting.

On April 19, Swinehart attempted to cash a $3,000.00 check, drawn on the "Shirley Johnston" account, at the Neffsville branch of the First Farmers Bank. A bank employee, telling Swinehart that there were insufficient funds in the account, refused to cash the check. Swinehart informed the employee that a deposit had been made the previous night at the Park City branch. The employee told Swinehart to return the next day to see if the deposit had cleared.

Upon his return on April 20, Swinehart was arrested by agents of the United States Secret Service. One of the agents testified that the Service had learned of the deposits of the stolen bonds from the bank and other sources, that Swinehart had attempted on April 19 to cash a check drawn on the "Shirley Johnston" account, and that he was expected to return the following day. At the scene of the arrest, the agents obtained from Swinehart the checkbook that the bank had given "Shirley Johnston" when she opened the account on April 15, a bank identification card bearing the name "LeRoy Johnston," and an interest computation sheet listing the stolen Johnston bonds which had been given to "Shirley Johnston" at the time she opened the account.

## II. IMPROPER PROSECUTORIAL STATEMENTS

During his closing remarks to the jury, the prosecutor suggested that, in his opinion, Swinehart was guilty,[2] and made several references to the veracity of a handwriting expert called as a prosecution witness.[3] Swinehart's counsel did not object to

---

1. 18 U.S.C. §§ 371, 472 (1976). The jury acquitted Swinehart on one aiding and abetting count. Swinehart was sentenced to three years imprisonment on the conspiracy count and to a concurrent term of three years on the aiding and abetting count. The trial judge suspended sentence on the thirteen forgery counts and placed Swinehart on five years probation.

2. The prosecutor stated:
   Now, for instance, *who but a guilty person* would sign the name of another person, a man who lives in Phoenix, Arizona, whom he has never met, who doesn't know him, to the back of a United States Savings Bond? Who would sign that person's name in the back? Someone who intended to commit forgery, who intended to deceive, deception. That evidences a guilty mind, guilty knowledge.
   \* \* \* \* \* \*
   And easy enough to state, but I will state it, anyway: *Innocent persons do not attempt to cash checks on accounts in which the only deposit that has ever existed were stolen U.S. Savings Bonds*, which was opened for the sole purpose of depositing stolen and forged U.S. Savings Bonds. *Innocent people, persons with innocent minds, do not do that.*
   \* \* \* \* \* \*
   *Innocent people do not give phony stories in that situation.* And I suggest to you that *the defendant did give a phony story.*
   (emphasis added).

3. In the course of summarizing the testimony, the prosecutor stated:
   Also, what was he asked? "Well, Mr. Choate, isn't it true that two aspects of a person attempting to mimic another person's signature would be stops and gaps?"
   He said, "Yes." *He is an honest witness.*
   \* \* \* \* \* \*
   I suggest to you that Mr. Choate, of all the witnesses—and I believe that all the witness-

these comments, nor did he request the trial judge to instruct the jury to disregard them.[4] Swinehart now contends that these remarks deprived him of due process.

In previous cases, we have reprimanded prosecutors who, in the course of opening or closing argument, vouch for the veracity of a government witness or express their views regarding the guilt of the defendant.[5] Such statements are both contrary to decisions of this Court [6] and violate the Code of Professional Responsibility of the Pennsylvania Supreme Court.[7] It is with considerable concern, therefore, that we must again express our disapproval of improper prosecutorial comments about a witness' veracity and the defendant's guilt.[8]

Despite our disapprobation, we are constrained by previous decisions of this Court to reject Swinehart's plea for a new trial on this ground unless, reading the record as a whole, we conclude that he was prejudiced by the prosecutor's comments. In the past, the Court has distinguished between prosecutorial remarks regarding the defendant's guilt or a witness' credibility that are based on the evidence and those that are based on information outside the record. We have stated that the latter constitute reversible error per se, but the former are grounds for new trial only if the defendant was prejudiced by the remarks.[9]

The improper prosecutorial statements in this case were limited to comments regarding evidence adduced at trial. Accordingly, they do not constitute reversible error per se, and we must determine whether Swinehart was prejudiced by them. The record

es that testified, testified honestly—was *one of the most honest.*

  *   *   *   *   *   *

I suggest that the expert in this case who testified concerning the questioned documents, that *his testimony is totally worthy of belief.* . . .

(emphasis added).

4. The attorney's failure to object was one ground for Swinehart's motion for new trial. *See* part IIIB *infra.* After the verdict, Swinehart dismissed his trial attorney and obtained new counsel who prepared the motion for new trial.

5. *E. g., United States v. Gallagher,* 576 F.2d 1028, 1041–43 (3d Cir. 1978); *United States v. Benson,* 487 U.S. 978, 981–82 (3d Cir. 1973); *United States v. LeFevre,* 483 F.2d 477 (3d Cir. 1973); *United States v. Schartner,* 426 F.2d 470, 477–78 (3d Cir. 1970).

6. In *United States v. LeFevre,* 483 F.2d 477, 478–79 (3d Cir. 1973), we adopted Standard 5.8(b) of the American Bar Association's Prosecution Standards as the law governing practice in the district courts of this Circuit. That standard provides:

It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence of the guilt of the defendant.

Standards Relating to The Prosecution Function and The Defense Function 39 (1971).

7. Ethical Canon 7–24 provides in relevant part:

The expression by a lawyer of his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpabil-

ity of a civil litigant, or as to the guilt or innocence of an accused is not a proper subject for argument to the trier of fact.

Pennsylvania Rules of Court 183 (Purdon's 1979). Disciplinary Rule 7–106(C) provides:

In appearing in his professional capacity before a tribunal, a lawyer shall not:

  *   *   *   *   *   *

(4) Assert his personal opinion as to the justness of cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein.

*Id.* at 189. These standards are identical to those promulgated by the American Bar Association. Code of Professional Responsibility and Code of Judicial Conduct 34C and 37C (1976).

8. *United States v. Gallagher,* 576 F.2d 1028, 1043 (3d Cir. 1978). In *Gallagher,* we explained the reasons for the prohibition of this kind of prosecutorial comment:

Not only do they imply a personal belief in [the defendant's] guilt, but they also directly invite the jury to rely on the Government attorney's experience in prosecuting criminals generally and on the Government attorney's 'sincerity'. Neither the prosecutor's general experience nor his moral integrity has anything to do with the evidence in the case.

*Id.* at 1041 (quoting *United States v. Schartner,* 426 F.2d 470, 478 (3d Cir. 1970)).

9. *Id.* at 1041–43.

developed at trial[10] persuades us that the jury would have convicted Swinehart even had it not been exposed to the improper prosecutorial comments. Swinehart was apprehended attempting to withdraw funds from a bank account comprised of the proceeds of stolen bonds. Several items linking him to the stolen bonds were obtained directly from him at the time of his arrest. And, a handwriting expert, whose testimony was not contradicted, declared that the signature on thirteen of the bonds matched Swinehart's handwriting.

Moreover, the trial judge, in his charge to the jury, helped dispel any improper inferences the jurors might have drawn from the prosecutor's remarks. In clear terms, the judge instructed that Swinehart was presumed to be innocent and that the prosecution had the burden of proving guilt beyond a reasonable doubt; that "[s]tatements and arguments of counsel are not evidence in the case"; that the jurors are the "sole judges of the credibility of all witnesses"; and that the jurors should give the expert's testimony "such weight as [they] may think it deserves." The district judge also noted specifically that "throughout the closing arguments of counsel you have heard reference made to the credibility of witnesses," and reiterated that "[y]ou as jurors . . are the sole judges of the credibility of the witnesses and the weight their testimony deserves."

In light of these careful instructions, as well as the evidence adduced by the prosecution, we conclude that Swinehart was not prejudiced by the prosecutor's remarks.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

■ The Sixth Amendment not only provides defendants in criminal proceedings the right to assistance of counsel, but also guarantees that such assistance be effective. We have defined the standard of effectiveness as "the exercise of the customary skill and knowledge which normally prevails at the time and place." *Moore v. United States*, 432 F.2d 730, 736 (3d Cir. 1970) (in banc). Thus, to succeed on an ineffective assistance claim, a defendant must demonstrate that his counsel's performance fell below the *Moore* standard and resulted in prejudice to the client.[11]

### A. Cognizability on Direct Appeal

■ Before addressing these questions, we must determine whether the issue of effective assistance may be raised on direct appeal, or whether it is cognizable only in a collateral proceeding under 28 U.S.C. § 2255 (1976). In *United States v. Rad-O-Lite of Philadelphia, Inc.*,[12] an appeal from a criminal conviction, we declined to hear a claim of ineffective assistance because the contention was not raised in the district court.[13] Such claims frequently involve questions regarding conduct that occurred outside the purview of the district court and therefore can be resolved only after a factual development at an appropriate hearing. Because in most cases a defendant does not change counsel before final judgment is entered, ineffective assistance claims are rarely raised at trial and, therefore, can be brought to the attention of the district court only on collateral review under § 2255. When, as in the present case, however, the question of ineffective assistance is raised in the trial court,[14] there would appear to be no basis for avoiding adjudica-

10. *See* part I *supra.*

11. *Id.* at 737. *See Cooper v. Fitzharris*, 586 F.2d 1325 (9th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979).

12. 612 F.2d 740 (3d Cir. 1979).

13. *Id.*, at 743–744. *See United States v. Schreiber*, 599 F.2d 534 (3d Cir.), *cert. denied*, —— U.S. ——, 100 S.Ct. 86, 62 L.Ed.2d 56, (1979), *United States v. Bazzano*, 570 F.2d 1120,

1128 (3d Cir. 1977), *cert. denied,* 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978); *United States v. Garcia*, 544 F.2d 681, 684 n.1 (3d Cir. 1976).

14. As Swinehart did here, a claim of ineffective assistance may be raised in a motion for a new trial. Fed.R.Crim.P. 33 authorizes the district court to grant such a motion "if required in the interest of justice."

tion of the claim on direct appeal.[15] Accordingly, we turn to the merits of Swinehart's claim that he was denied effective assistance of counsel.

### B. Merits

### 1. Failure to File Suppression Motion

The first argument in support of the ineffective assistance claim is that his counsel was remiss in failing to move to suppress the materials taken from Swinehart at the time of his arrest.

▮ In *United States v. Hines*[16] we held that "[e]ffective assistance does not demand that every possible motion be filed, but only those having a solid foundation." A motion to suppress the goods seized at the time of Swinehart's arrest would have lacked foundation. Warrantless searches of a suspect's person conducted during the course of a lawful arrest, are constitutional.[17] The only possible ground for a suppression motion then would be that the arrest was made without probable cause. At trial, the arresting agent testified that an investigation had determined that the bonds which comprised the "Shirley Johnston" account had been stolen, and that he was told by the bank that Swinehart had attempted on April 19 to cash a check drawn on the account and knew of a deposit, also comprised of stolen bonds, that was made on April 18. This information was sufficient to establish probable cause to arrest Swinehart. Thus, under existing Fourth Amendment case law, there was no foundation to support a motion to suppress the items taken from Swinehart. His trial counsel's failure to move to suppress the evidence therefore is not, as a matter of law, a sufficient predicate for the ineffective assistance claim, and accordingly there was no need for an evidentiary hearing on this question.

### 2. Failure to Object to Improper Prosecutorial Remarks

▮ Swinehart's second theory is that he was denied effective assistance by his counsel's failure to object to the improper prosecutorial remarks that were discussed in part II above.[18] To prevail under the *Moore* standard, a defendant must prove that he was prejudiced by his counsel's incompetency.[19] Because we have already concluded that Swinehart was not prejudiced by the prosecutor's comments,[20] any dereliction by defense counsel in failing to object, although unfortunate, would be legally harmless.

### 3. Use by Counsel of Alcohol and Drugs

In support of his motion for a new trial on grounds of ineffective assistance, Swinehart also filed an affidavit in which he alleged that his attorney was habitually late to trial and "consistently drank liquor and used drugs" during the trial. The district court held a hearing on these allegations at which Swinehart appeared as the sole witness. In a footnote to his order denying the motion, the trial judge discredited Swinehart's view of his counsel's physical condition:

> During and throughout the trial, neither the court nor its personnel observed defendant's counsel use alcoholic beverages or drugs nor did said counsel appear at any time to be under the influence there-

---

**15.** *Accord, United States v. DeCoster,* 159 U.S. App.D.C. 326, 333–34, 487 F.2d 1197, 1204–05 (D.C.Cir. 1973) ("when a claim of ineffective assistance [of counsel] is contemplated, it should first be presented to the district court in a motion for a new trial"); *United States v. Bender,* 457 F.2d 801 (9th Cir. 1972) (per curiam); *United States v. Katz,* 425 F.2d 928 (2d Cir. 1970).

**16.** 470 F.2d 225, 232 (3d Cir. 1972), *cert. denied,* 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703 (1973).

**17.** *See Chimel v. California,* 395 U.S. 752, 762, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969) ("[I]t is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.")

**18.** *See* notes 2 & 3 *supra.*

**19.** *See* text at note 12.

**20.** *See* part II *supra.*

of either by way of slurring or impediment of speech, impairment of motion, odor or otherwise. Tardiness of defendant's counsel was, in each instance, satisfactorily explained to the Court and at no time was the jury advised that any delay in the trial was due to the tardiness of defendant's counsel.

Judge Sloviter urges us not to entertain the appeal on this question because, in her view, there was not a full and fair hearing on the question of defense counsel's alleged inebriation, and therefore it would be better to consider the issue for the first time on a § 2255 motion. Swinehart raised this question in the district court as one of the grounds for his motion for a new trial. It was resolved by the district judge, and Swinehart appealed the court's decision on this very point. Under these circumstances, and because we cannot completely decide this appeal without resolving each basis for the ineffective assistance of counsel claim, we are constrained to adjudicate the inebriation question in the form in which it has been presented to us. The alternative is to abjure our duty to decide an issue over which we have jurisdiction.[21]

It is also not clear that remitting criminal appellants, whose ineffective assistance of counsel claims were not fully presented in the trial court, to the § 2255 forum would conserve judicial resources. In order to decide whether a claim was accorded full and fair consideration, we would have to review and assess the trial record just as we do in actually adjudicating the appeal. Thus, any saving of resources at the appeal stage by postponing resolution might well be illusory. Moreover, the suggestion that we defer adjudicating until a § 2255 motion is filed might, in some cases, result in duplication of judicial effort. If this Court on appeal denies an ineffective assistance of counsel claim, and the appellant subsequently brings a § 2255 motion that is premised solely on the same allegations that were adjudicated and rejected on appeal, then the district court would be able to dismiss the § 2255 motion based on the decision of the previous panel.[22] In contrast, if on direct appeal we reviewed the ineffective assistance claim, but declined to adjudicate it because there was not a full hearing in the trial court, we would have expended our resources without giving the § 2255 district court guidance, thereby requiring the latter to conduct a full, de novo inquiry into the identical, previously litigated claims. Thus, we conclude that judicial economy, as well as our duty to decide all issues necessary to the resolution of an appeal, require us to resolve, to the extent that they were decided by the trial court and raised on the present appeal, all of Swinehart's ineffective assistance of counsel claims.[23]

We thus turn to the merits of this aspect of Swinehart's claim of ineffective assistance of counsel. Inasmuch as the district court was acting as a finder of fact in considering this matter, we will not overturn its decision in this regard unless it is

---

**21.** *See Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821) (Marshall, C. J.):

> The judiciary cannot, as the legislature may, avoid a measure, because it approaches the confines of the constitution. We cannot pass it by, because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. . . . Questions may occur, which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously to perform our duty.

*See also* Wechsler, *Toward Neutral Principles of Constitutional Law*, 73 Harv.L.Rev. 1, 9

(1959) ("[T]he only proper judgment that may lead to an abstention from decision is that the Constitution has committed the determination of the issue to another agency of government than the courts.").

**22.** *See United States v. Palumbo*, 608 F.2d 529, 532–33 (3d Cir. 1979) (per curiam) (discussed in note 26 *infra*).

**23.** Inasmuch as custody is a jurisdictional prerequisite to ·a § 2255 motion, the suggestion that resolution of the issue be delayed until a § 2255 motion is filed might, on frequent occasions, require criminal defendants to begin serving their sentences before they could have their ineffective assistance of counsel claims resolved in the court of appeals.

clearly erroneous.[24] Based on the record that is available to us, it would appear that Swinehart had the opportunity to present testimony, expert and nonexpert, in support of his allegation that his trial counsel was inebriated. Swinehart apparently declined to do this and instead called only one witness—himself.[25] The district judge, who had ample occasion to observe the behavior of Swinehart's counsel during the course of the trial, rejected Swinehart's contention. Based on the record, we are unable to say that his finding in this respect is clearly erroneous. Accordingly, we do not hold, at least at this time, that the court erred in rejecting Swinehart's ineffective assistance claim.[26]

## IV. CONCLUSION

The judgment of the district court will be affirmed.

SLOVITER, Circuit Judge, concurring.

I agree that our prior decisions do not preclude us from consideration of the issue of ineffective assistance of counsel on direct appeal when the issue has been raised in the trial court. However, I believe we should take cognizance of that issue only when it is clear that defendant's claim was accorded full and fair consideration by the trial court. There should be an equivalence between, on one hand, the level of consideration accorded the claim in the trial court which we deem sufficient to take cognizance of the issue on direct appeal and, on the other hand, the level of consideration which will preclude relitigation of that issue in a section 2255 proceeding. *U. S. v. Pa-lumbo*, 608 F.2d 529, 532–33 (3d Cir. 1979) (per curiam). This will assure that defendant has been fairly treated, and will avoid unnecessary and undesirable duplication of effort in this court.

The record in this case furnishes no basis for a conclusion that appellant has had a full and fair consideration of his claim that his trial counsel used drugs and alcohol in the course of his trial preparation and defense. As noted in the majority opinion (note 26), there is no transcript of the hearing. Indeed the opinion itself raises the possibility that relitigation of this question may not be precluded in a section 2255 hearing. As long as that remains a possibility, we should not bifurcate our consideration of the claim. Our reluctance to consider on direct appeal claims which do not have a fully developed record stems not from an abdication of our duty but from our recognition of the stage at which we can best fulfill that duty. *United States v. Rad-O-Lite of Philadelphia, Inc.*, 612 F.2d 740, at 743–744 (3d Cir. 1979); *United States v. Rodriguez*, 582 F.2d 1015 (5th Cir. 1978) (per curiam); *United States v. Kazni*, 576 F.2d 238, 242 (5th Cir. 1978).

I think the appropriate disposition of this case would be to decline to consider the ineffective assistance of counsel issue insofar as it relates to the claim that trial counsel used drugs and alcohol, so that there will be no question that Swinehart would be free to raise the issue in a section 2255 proceeding if he deemed it appropriate.[1] In all other respects, I agree with the decision.

**24.** *United States v. Stassi*, 583 F.2d 122, 126 (3d Cir. 1978); *United States v. Delerme*, 457 F.2d 156, 159–60 (3d Cir. 1972).

**25.** No transcript of this hearing is included in the record.

**26.** Our resolution of this contention may not necessarily foreclose Swinehart from raising his claim of ineffective assistance in a § 2255 motion. Because there is no transcript of the hearing, *see id.*, there is nothing in the record to indicate that Swinehart would be precluded from relitigating this question in a § 2255 motion under the rule of *United States v. Palumbo*, 608 F.2d 529, 532–33 (3d Cir. 1979) (per curiam) (questions which received full and fair consideration at original criminal trial and on direct appeal may not be relitigated in a § 2255 proceeding). In support of such a motion, Swinehart might well have the opportunity to present additional evidence.

**1.** Our consideration of this claim may foreclose Swinehart from a section 2255 hearing, since he may not be able to meet the criteria established by this court which preclude relitigation of a claim considered at the original trial and direct appeal unless there has been "newly discovered evidence that could not reasonably have been presented at the original trial, a

change in applicable law, incompetent prior representation by counsel, or other circumstances indicating that an accused did not receive full and fair consideration of his federal constitutional and statutory claims . . . ." *United States v. Palumbo*, 608 F.2d at 533 (footnotes omitted).