**UNITED STATES of America**

**v.**

**Salvatore SCAFIDI.**

**Civil No. 97–2495.**
**Criminal No. 88–00003–15.**

United States District Court,
E.D. Pennsylvania.

July 30, 1997.

David E. Fritchey, Asst. U.S. Atty., Philadelphia, PA, for government.

Salvatore Scafidi, pro se.

### MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

### I. INTRODUCTION

On November 19, 1988 Salvatore Scafidi was convicted by a jury in a major mafia trial of RICO, RICO Conspiracy and illegal gambling business pertaining to lotteries (numbers), 18 U.S.C. §§ 1962(c), (d) and 1955. The jury specifically found him guilty of eleven RICO predicate acts consisting of one murder, one attempted murder, seven extortions, and running two illegal gambling businesses. Post verdict motions were denied. *United States v. Scarfo*, 711 F.Supp. 1315 (E.D.Pa.1989). Subsequently, Mr. Scafidi was sentenced to a forty year term of imprisonment on May 3, 1989. Mr. Scafidi appealed his conviction, *United States v. Pungitore*, 910 F.2d 1084 (3d Cir.1990); it was affirmed and his petition for certiorari was denied. 500 U.S. 915, 111 S.Ct. 2010, 114 L.Ed.2d 98 (1991).

On April 11 and 16, 1997, eight days before the new statute of limitations period expired pursuant to the Anti–Terrorism and Effective Death Penalty Act of 1996, Mr. Scafidi filed the instant petition for habeas corpus relief under 28 U.S.C. § 2255. He claims error in that (1) he did not knowingly, voluntarily and intelligently waive the conflicts of Attorney Robert Simone; (2) his attorney, Christopher Furlong, provided ineffective assistance by not raising this issue on appeal or at the time; and (3) the government failed to disclose "favorable and inculpatory evidence" that implicated Mr. Simone in criminal activity. We do not agree. As the facts of this case have been much discussed by this court previously, *see Scarfo*, 711 F.Supp. 1315, we will not repeat ourselves.

### II. DISCUSSION

#### A. Waiver of Conflict

■ Mr. Scafidi's first argument is that "his waiver of a potential conflict of interest regarding the lead Counsel, Mr. Simone, was not knowingly, voluntarily, or intelligently made." *Memorandum in Support of Petition I ("Memorandum I")*, at 3. He states his belief that the government was pursuing an indictment against Mr. Simone at the time of his trial, and he should have been advised of this conflict. Further, the conflict was so severe that he could not possibly have waived it in a manner consistent with the Sixth Amendment. *Id.* at 3–4.

Unfortunately, Mr. Scafidi's argument neglects one crucial point: Mr. Simone was not his attorney at any point relative to this trial. Rather, Attorney David Chesnoff represented Mr. Scafidi briefly on the matter of bail. On September 8, 1988, during pre-trial motions, it became apparent that Mr. Scafidi lacked the means to continue employing Mr. Chesnoff as his attorney. He therefore asked the court to appoint Attorney Christopher Furlong to represent him. We then colloquied him in open court as follows:

THE COURT: I'll ask if Mr. Scafidi would come forward at this time with his proposed new attorney. Good afternoon, sir. You're asking that I appoint this gentleman who's standing next to you to represent you in this trial. Is this correct?

MR. SCAFIDI: That's correct.

THE COURT: All right. Has anybody threatened you in any way to get you to do this?

MR. SCAFIDI: No, sir.

THE COURT: Or promised you anything to get you to do it?

MR. SCAFIDI: No, sir.

THE COURT: You're doing this of your own free will?

MR. SCAFIDI: Yes, sir.

THE COURT: And, as I said to the other two people that were up here and I'm certain you heard what I said to them, as a matter of common sense, if you had a lawyer who had been representing you a month or two ago, that lawyer would have had more time to prepare than this gentleman's going to have today. Now that doesn't mean that he wouldn't be adequately prepared, but certainly as a matter of common sense, he would have more time

for preparation. You understand that, don't you?

MR. SCAFIDI: Yes.

THE COURT: And, you nevertheless wish to have this gentleman represent you and wish to have me appoint him today, Is that correct?

MR. SCAFIDI: Yes.

THE COURT: And, you feel he can adequately represent you in this matter?

MR. SCAFIDI: Yes, sir.

THE COURT: All right. I'll ask counsel, do you feel you can adequately prepare for this trial and represent this gentleman?

MR. FURLONG: Yes, sir.

THE COURT: All right. I am going to indicate that the Government is to also provide you with all discovery as of today's date.

MR. FURLONG: Fine.

*Transcript,* September 8, 1988 at 23–24.

On September 9, 1988 the government raised the issue of a possible conflict of interest between Mr. Simone and his client, Mr. Nicodemo Scarfo. As discussed in open court on that day, Mr. Simone had been implicated by the cooperating witnesses in the extortion of Mr. William Rouse, a charged offense in the instant trial. In addition, a number of the photographs that the government planned to introduce as evidence included Mr. Simone, and one of the cooperating witnesses would testify that Mr. Simone was present during the discussion of one of the RICO predicate act murders. *Transcript,* September 9, 1988 at 44–47. Following this discussion, and following an extensive colloquy, Mr. Scarfo waived these conflicts in open court. Although Mr. Scafidi states in his petition that he waived these conflicts as well, *Memorandum I* at 2, this is not borne out by a review of the transcripts; nowhere do the transcripts reveal a colloquy between this court and Mr. Scafidi on the conflicts of Mr. Simone, or the nature of his representation.

It is inescapable that Mr. Scafidi "cannot even assert a conflict of interest impeding Simone's representation of [him] because Simone represented only Scarfo. While Simone may have figure prominently in formulating and presenting the unified defense, that does not mean that he enjoyed an attorney-client relationship with very appellant in this case." *United States v. Pungitore,* 910 F.2d 1084, 1143 (3d Cir.1990). For this reason, it is hornbook law that regardless of the conflicts that Mr. Simone may or may not have had, Mr. Scafidi was not in a position to waive them because he was not Mr. Simone's client. *Id.* Indeed, there is no evidence that Mr. Scafidi ever employed Mr. Simone as his lawyer. Therefore, the question of whether or not this waiver was knowingly, voluntarily, or intelligently made in a manner consistent with the Sixth Amendment is moot.

Consequently, as the Third Circuit pointed out in the direct appeal of this case, a more appropriate challenge relevant to Mr. Simone's conflicts of interest would be that Mr. Scafidi's attorney should have moved for severance. *Pungitore,* 910 F.2d at 1143. Although Mr. Scafidi did not raise this issue, we will discuss this further in terms of ineffective assistance of counsel, below.

### B. Ineffective Assistance of Counsel

### 1. Standard

The right to have the assistance of counsel is provided for in the Sixth Amendment of the United States Constitution. This right has been deemed fundamental by the Supreme Court; it cannot be denied to the defendant absent intentional and actual waiver. *Johnson v. Zerbst,* 304 U.S. 458, 462, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The Supreme Court has set out a two-prong test to establish a claim of ineffectiveness of counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner must show both that: (1) his counsel's conduct was deficient, and "fell outside the wide range of professionally competent assistance" and (2) the petitioner was prejudiced as a result of that deficient conduct. *Strickland,* 466 U.S. at 687; *United States v. DeRewal,* 10 F.3d 100, 104 (3d Cir.1993), *cert. denied,* 511 U.S. 1033, 114 S.Ct. 1544, 128 L.Ed.2d 196 (1994).

To satisfy the first prong, deficiency, a petitioner must show that his counsel's conduct fell below an objective standard of rea-

sonableness. *Strickland,* 466 U.S. at 688. In evaluating such a claim, we "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. We may not use the benefit of hindsight to second-guess tactical decisions made by an attorney unless they are unreasonable. *See Id.* at 690; *Diggs v. Owens,* 833 F.2d 439, 444–45 (3d Cir.1987) ("An attorney is presumed to possess skill and knowledge in sufficient degree to preserve the reliability of the adversarial process and afford his client the benefit of a fair trial. Consequently, judicial scrutiny of an attorney's competence is highly deferential."), *cert. denied,* 485 U.S. 979, 108 S.Ct. 1277, 99 L.Ed.2d 488 (1988). Moreover, the mere fact that a tactic has been unsuccessful does not necessarily indicate that it was unreasonable. *Strickland,* 466 U.S. at 689.

To guide us in determining the reasonableness of the attorney's performance, the Supreme Court in *Strickland* noted that the American Bar Association Standards may be referred to as a guideline. *Strickland,* 466 U.S. at 688; *See also, Government of the Virgin Islands v. Weatherwax ("Weatherwax I"),* 20 F.3d 572, 579 (3d Cir.1994), *rev'd on other grounds, Government of the Virgin Islands v. Weatherwax ("Weatherwax II"),* 77 F.3d 1425, 1435 (3d Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 538, 136 L.Ed.2d 423 (1996).

One of the most relevant standards in this context is ABA Standard for Criminal Justice § 4–5.2 (3d ed.1993), "Control and Direction of the Case." This section dictates which decisions are ultimately to be made by the defendant, and which are to be made by the defense counsel. Specifically, strategic and tactical decisions such as which witnesses to call, whether to conduct cross-examination, and what trial motions to make are within the province of the attorney after consultation with the client. ABA Standard 4–5.2(b). The Commentary thereto states that when the attorney in question makes such strategic or tactical decisions, "[o]nly when [his] behavior revealed ineptitude, inexperience, lack of preparation or unfamiliarity with basic legal principles [will these] actions amount to ineffective assistance of counsel." *Weatherwax I,* 20 F.3d at 579, *citing* Commentary at 4.67–68. Therefore, if a decision falls within the realm of "strategic decisions" to be made by the attorney, we will find whatever decision that attorney made to be sufficiently deficient *only* if he either failed completely to consult with his client, or if the decision was itself inept or incapable of interpretation as sound.

If the first prong is proven, a petitioner must also prove the second prong, prejudice. To show prejudice, a petitioner must show that there is a reasonable probability that there would have been a different outcome; that the deficient performance "deprived the defendant of a trial whose result is reliable." *DeRewal,* 10 F.3d at 104, *citing Strickland,* 466 U.S. at 690. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. We must examine the trial with our focus not on the outcome, but on whether the error so affected the adversarial balance that the trial was rendered unfair and the verdict rendered suspect. *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

**2. Arguments Not Raised**

Mr. Scafidi essentially makes two claims of ineffective assistance of counsel. First, he claims that Mr. Furlong was ineffective by not raising on appeal the argument that the waiver he gave of Mr. Simone's conflicts at trial was not valid. Second, as we stated above, it is apparent that Mr. Scafidi is claiming that Mr. Furlong was ineffective by failing to move for severance. Neither claim has merit.

Mr. Scafidi complains that the issue of his waiver of Mr. Simone's conflicts was a "dead bang winner," and as such, Mr. Furlong erred in not presenting it on appeal. *Memorandum I* at 5. However, the decision of whether to make a motion or raise an issue falls clearly within the realm of "attorney decisions." *See Weatherwax II,* 77 F.3d at 1435. To overcome the presumption that his counsel's actions were within the objective standard of reasonableness, Mr. Scafidi must show that Mr. Furlong's decision to not raise

the issue of waiver was unsound. *See Darden v. Wainwright,* 477 U.S. 168, 169, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). If there exist good strategic reasons for his decision, we may not find Mr. Furlong ineffective merely because we may have made a different choice. Moreover, this circuit has repeatedly held that "effective assistance does not demand that every possible motion be filed, but only those having a solid foundation." *United States v. Swinehart,* 617 F.2d 336, 341 (3d Cir.1980); *United States v. Hines,* 470 F.2d 225, 232 (3d Cir.1972), *cert. denied,* 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703.

In the case at hand, it is very clear that Mr. Scafidi had no attorney-client relationship with Mr. Simone, and therefore, there was nothing for him to waive. Indeed, the argument that Mr. Scafidi believes to be a "dead bang winner" is in fact completely without merit. Those of his co-defendants who *did* raise the issue to the appellate court were unsuccessful. *See Pungitore,* 910 F.2d at 1143. Therefore, it was not error for Mr. Furlong to decline to raise this issue on appeal.

■ As noted, it is also apparent from Mr. Scafidi's petition that he may be arguing that Mr. Furlong was in error by not making a motion for severance upon the discovery of Mr. Simone's conflicts of interest. However, this complaint is also without merit. Again, we note that whether to make a motion is clearly an "attorney decision." *See Weatherwax II,* 77 F.3d at 1435. Hence, Mr. Scafidi must overcome the presumption that his counsel's actions were within the objective standard of reasonableness by showing that the decision to not move for severance was not sound trial strategy. *See Darden,* 477 U.S. at 169.

In the instant case, good strategic reasons did exist for Mr. Furlong's decision to not move for severance. First, motions to sever are disfavored in complex cases. The instant case involved seventeen defendants, ten counts including forty racketeering acts, and lasted for fifty-three trial days. It was indeed the epitome of a very long and complex case. Mr. Scafidi's co-defendant Joseph Pungitore had already filed a pre-trial motion

for severance which had been denied by the court. That denial was ultimately affirmed on post-verdict motions. *United States v. Scarfo,* 711 F.Supp. 1315, 1340–42 (E.D.Pa. 1989), *aff'd, United States v. Pungitore,* 910 F.2d 1084 (3d Cir.1990).

Second, the seventeen defense counsel involved in this case had elected to pursue an overall unified defense strategy which consisted primarily of denying the existence and criminal purpose of the La Cosa Nostra, denying the defendants' participation in it, and denying the credibility of the government's principal cooperating witnesses. A motion to sever would have been directly counter to such a strategy, which had proven successful in several prior trials involving the same defendants.

Finally, as the Third Circuit stated in a footnote in the direct appeal of this case, discussing the idea that failing to request a severance was not ineffective assistance under these facts; "given the strength of the government's case against the appellants, their attorneys might have had a difficult time convincing the trial court that the evidence implicating Simone would cause such severe prejudice as to require a severance." *Pungitore,* 910 F.2d at 1143 n. 85. In light of this, Mr. Furlong's decision was not unreasonable; on the contrary, it was a deliberate tactical decision well within the bounds of reasonable professional assistance. As there is no evidence of deficient performance on the part of Mr. Furlong as to either of Mr. Scafidi's arguments, we need not discuss the question of prejudice.

### C.  Failure to Provide Evidence

■ Mr. Scafidi's final complaint reiterates his belief that Mr. Simone was under criminal investigation at the time of the instant trial, and that the government withheld evidence implicating Mr. Simone in crimes "directly related and intertwined with the charges defendant was facing and being tried for." *Memorandum in Support of Petition II, ("Memorandum II"),* at 3. This withholding of evidence, Mr. Scafidi argues, led him to make the uniformed waiver discussed above.

Mr. Scafidi's objection is thus limited to only the evidence of crimes for which Mr. Simone would eventually be indicted .[1] He does not contest that he had full disclosure of the government's evidence regarding Mr. Simone's involvement in the Rouse extortion, his presence at a meeting discussing a murder, and his presence in pictures with various defendants. Mr. Scafidi also does not say that he needed the evidence, if it in fact existed, because it exculpated him or because he needed to impeach Mr. Simone or another witness. Rather, he argues that he should have been given the material only because it would have put him in a better position to intelligently and knowingly decide whether or not to waive any conflicts of interest of Mr. Simone. *Memorandum II*, at 2–3.

However, Mr. Scafidi has not been able to present us with any caselaw, nor can we find ourselves, that suggests that he was entitled to that evidence for that reason. He points to *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), for support, but this reliance is unavailing. *Kyles* dealt with the government's failure to disclose evidence that was exculpatory or would have been helpful in impeaching prosecution witnesses. The defendant in that case had a right to such evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). *Kyles*, 514 U.S. at 432–33. Mr. Scafidi, conversely, does not allege that the evidence he seeks was exculpatory in any way; only that it would have helped him waive conflicts. As such, *Kyles* is not only unhelpful in that it does not discuss the disclosure of evidence relevant to waiver of conflicts for co-defendant's counsel, it actually hinders Mr. Scafidi's argument in that it points out that for the disclosure requirement to be implicated without a request from the defendant, the evidence must be favorable to that defendant. *Kyles*, 514 U.S. at 433.

In addition, none of the remaining cases that Mr. Scafidi cites for support have any relevance to the case at hand. Rather they

deal with: the ability to waive one's counsel and represent oneself (*Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)); the waiver of constitutional rights when one pleads guilty (*McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)); the waiver of the right to confrontation (*Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965)); and the constitutionality of a statute prohibiting the use of contraceptives (*Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961)).

Moreover, as discussed above, the fact that Mr. Simone was not Mr. Scafidi's attorney, and therefore enjoyed no attorney-client relationship with him, makes the question of waiver of conflicts moot. This evidence could not possibly have impacted his "waiver" of Mr. Simone's conflicts, because Mr. Scafidi was not entitled to waive them. As a result, Mr. Scafidi was simply not entitled to the evidence for the purposes he suggests. Without such an entitlement or right to review this evidence, the government cannot be faulted for failing to provide it. Ergo, Mr. Scafidi's last request for relief must fail.

### III. CONCLUSION

A thorough review of the record in this matter directs the conclusion that Mr. Scafidi is not entitled to relief. All three of his arguments in the instant petition are premised on the faulty notion that he had an attorney-client relationship with Mr. Simone such that his waiver of Mr. Simone's conflicts of interest was required. This is simply not true. Therefore, it was not ineffective assistance of counsel for his attorney to decline to present this issue on appeal, or move for severance at trial. Finally, as the government is not required to disclose investigative materials relating to possible criminal offenses of co-defendant's attorneys so that the co-defendants may properly waive any conflicts, Mr. Scafidi's last claim fails as well.

---

1. The government appears not to debate whether such evidence in fact existed. For ease of discus-

sion, we will assume, *arguendo*, that it does.

For the foregoing reasons, we will deny Mr. Scafidi's petition for relief pursuant to 28 U.S.C. § 2255.

An appropriate order follows.

### ORDER

AND NOW, this 30th day of July, 1997, upon consideration of defendant Salvatore Scafidi's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255, filed April 11 and supplement filed April 16, 1997, and the government's response thereto, filed July 18, 1997, it is hereby ordered that the same motion is DENIED.