**UNITED STATES of America,**
**Appellee,**

**v.**

**Norman BURTON, Appellant.**

**No. 1061, Docket 75–1064.**

United States Court of Appeals,
Second Circuit.

Submitted June 19, 1975.

Decided June 20, 1975.

18

Paul J. Curran, U. S. Atty., S. D. N. Y., Daniel J. Beller, and Lawrence S. Feld, Asst. U. S. Attys., New York City, on the brief, for appellee, U. S.

Bobick, Deutsch & Schlesser, New York City, on the brief, for appellant, Norman Burton.

Before LUMBARD, GIBBONS;* and GURFEIN, Circuit Judges.

LUMBARD, Circuit Judge.

Defendant, Norman Burton, appeals from his conviction by a jury in the Southern District, Harold R. Tyler, Jr., *Judge,* of two counts of distributing, or possessing with intent to distribute, an eighth of a kilogram of cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2.[1] We affirm.

■ Burton's initial claim of error is that it was improper for the government to use his nickname "Big Time" in the indictment[2] and for the prosecutor to make repeated reference to him by that nickname during the presentation of the government case. Burton, however, never requested that the court strike the reference to "Big Time" from the indictment and therefore waived any claim that the nickname should not have been included therein. See Rule 12(b)(2), Fed. R.Crim.P. The evidence at trial indicated that Burton indeed was known by the nickname "Big Time." Such evidence helped identify, as the defendant's voice, the male voice on two tape recordings of telephone conversations introduced by the government. On these tapes the female caller, a government witness, had asked to speak to "Time," and then a male voice came on. In view of the fact that testimony as to the defendant's nickname was relevant to the government's case and therefore properly before the jury, the prosecutor's occasional reference to the defendant by his nickname during the presentation of the government's case, while certainly not to be encouraged, was not prejudicial and does not require the grant of a new trial.[3]

■ A further claim of error relates to testimony by Marion Ladd, a government witness, that her life had been threatened. In the course of developing Ladd's testimony, the prosecutor asked Ladd why she had been taken into protective custody by the government in July 1974. (The defendant was charged with crimes occurring in May 1974. The trial was held in December 1974.) Defense counsel objected, and the court sustained the objection, but not before the witness stated that her life had been threatened. Such potentially prejudicial testimony as to why the witness was in protective custody should not have been brought out on direct examination solely in anticipation of an attack by the defense on the witness's credibility based on the protective custody arrangement.

However, we believe that this was harmless error under all the circumstances. Ladd testified that she had worked extensively as an undercover agent for the government by developing between twenty and twenty-five drug-related cases. There would presumably be many persons other than Burton who might have made a threat to Ladd's life. There was no evidence to indicate that it was Burton who made such a threat, and the government never argued or implied that it was Burton who threatened Ladd. Finally, the testimony in question was passed over quickly. Defense counsel did not ask that the testimony be stricken, nor did he request a curative instruction. The prosecutor was immediately directed to move on to other things. In view of the strong case against Burton, we think this evidence was harmless beyond a reasonable doubt.

■ Burton also argues that his conviction should be reversed because reference was made to a narcotics investiga-

---

* United States Circuit Judge for the Third Circuit, sitting by designation.

1. Burton was sentenced on February 14, 1975, to concurrent terms of imprisonment of three years and six months, to be followed by a three-year term of special parole.

2. The indictment named "Norman Burton; a/k/a "Big Time" and a companion "John Doe 'Ron'."

3. Defense counsel objected to the use of the nickname by the prosecutor only well into the trial (Tr. 136–37), and even then he seemed to withdraw any objection when the court indicated that it did not see any prejudice.

**20**

tion of him in 1973. Defense counsel indicated in his opening statement that he would prove that Dorothy Johnson, an undercover New York City Police detective, met Burton in 1972, had an affair with him, and now was testifying against him because she had been scorned. On direct examination of Johnson, the government elicited testimony that she had first met Burton not in 1972, but in 1973 "on business"—namely while conducting an investigation that the Task Force had on Norman Burton. When asked what sort of investigation that was, she stated that it was a narcotics investigation. The trial judge, in response to defense counsel's objection to that question and answer, instructed the jury to disregard this testimony and made it clear that there were no charges or arrests or convictions in 1973. The court stated, "One thing we know is that Mr. Burton is not accused by anybody of doing anything wrong in 1973. Keep that in mind." Tr. 95–96. Such a cautionary instruction was repeated again by the court when defense counsel, on cross-examination of Johnson, inadvertently opened up the question of whether Burton might have possessed narcotics in 1973. (Tr. 146–48) In view of the trial judge's careful attention to focusing the jury's attention on testimony relating to defendant's alleged criminal conduct in May 1974, the reference by Johnson to a narcotics investigation of Burton in 1973 was not so improper as to warrant reversal.

 Burton also argues that the "Gourmet Cokebook" seized by police pursuant to a warrant from Burton's apartment was improperly admitted into evidence. We disagree. Ladd testified for the government that Burton had spoken at length about the purity of cocaine and the importance of a "cut." This book, with which Burton later admitted being familiar, tended to corroborate Ladd's testimony, as the book dealt with the use of lactose as a "cut" for cocaine. It also rebutted defendant's claim that he was not interested in narcotics.

The prosecutor's comments in summation regarding the defendant's failure to call witnesses to corroborate certain aspects of his defense was not error. The witnesses referred to were not equally available to the prosecution, since the defendant did not reveal the names of persons he testified he had stayed with in Miami or who had seen him with detective Johnson in 1972.

Accordingly, the convictions are affirmed. The mandate shall issue forthwith.