UNITED STATES of America

v.

RAD–O–LITE OF PHILADELPHIA, INC. a/k/a Pre-Emption Devices, Inc., Appellant.

No. 79–1551.

United States Court of Appeals, Third Circuit.

Argued Oct. 18, 1979.

Decided Dec. 28, 1979.

William J. Winning, Dilworth, Paxson, Kalish, Levy & Kauffman, Philadelphia, Pa., for appellant.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Peter J. Smith, Asst. U. S. Attys., Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, GARTH and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Rad-O-Lite of Philadelphia, Inc., a Pennsylvania corporation, appeals from its conviction for conspiracy to engage in racketeering activities. 18 U.S.C. § 1962(d) (1976). Rad-O-Lite asks us to find that its sixth amendment right to assistance of counsel was violated at trial because of the joint representation of the corporation and the corporate officer responsible for the actions that led to the conspiracy charges against Rad-O-Lite. The appellant also asserts error in the district court's denial of its motion to strike references to "Pre-Emption Devices, Inc." from the indictment.

### I.

Rad-O-Lite is a small corporation engaged in the manufacture of electrical equipment, including equipment for control of street and highway traffic. Its major product is a pre-emption device, which is an attachment to a traffic light that enables ambulances, fire trucks, and other emergency vehicles to obtain green lights at controlled intersections. Rad-O-Lite also manufactures and sells a pre-emption chassis, which is a metal frame for a pre-emption device. During the period covered by the indictment, Rad-O-Lite's principal shareholder and president was Martha Egley. Its principal officer was its vice-president and chief operating officer, Michael J. Manchester. The indictment charged both Rad-O-Lite and Manchester with conspiracy.[1]

The conspiracy charges stem from an elaborate scheme to bribe Joseph Barszowsky, an assistant traffic engineer and influential official at a regional office of the Pennsylvania Department of Transportation (PennDOT). The government offered evidence to show that Barszowsky solicited and received bribes in return for his efforts to promote sales of Rad-O-Lite products to municipalities. Specifically, Barszowsky advised municipalities that the regional PennDOT office would not give them the

---

1. The indictment also named Manchester in a count charging association with an enterprise engaged in a pattern of racketeering, 18 U.S.C. § 1962(c) (1976), and in two counts charging mail fraud, 18 U.S.C. § 1341 (1976). Rad-O-Lite was named only in the conspiracy count.

permission required for installation of new traffic lights unless they purchased and used Rad-O-Lite's pre-emption device and pre-emption chassis. He also arranged to have Rad-O-Lite's pre-emption chassis included in the list of required equipment in one of PennDOT's programs for funding traffic safety improvements.

The government did not attempt to prove that Manchester or any other Rad-O-Lite employee made payments to Barszowsky. Rather, it offered evidence to show that independent sales representatives gave Barszowsky part of the commissions they received on sales of Rad-O-Lite equipment. Rad-O-Lite's first sales representative, Harry Weigand, made an agreement with Barszowsky in February of 1972 to turn over half of his commissions. Weigand made payments indirectly by writing checks to Barszowsky's secret partner, John F. Dallas, who passed the payments on to Barszowsky in the form of cash and benefits in kind, such as travel, home furnishings, and scholarship money for Barszowsky's child. This arrangement continued until April 1975, when Manchester dismissed Weigand as Rad-O-Lite's representative and replaced him with John F. Dallas. Dallas continued the practice of splitting commissions with Barszowsky up to the date of the indictment, September 21, 1978.

As for Manchester, the government conceded that he was not the "criminal mastermind" of the conspiracy but argued that he was a knowledgeable associate. It offered substantial evidence of an extensive, albeit secondary, involvement.

Some of the government's evidence showed that Manchester knowingly cooperated with Barszowsky in operating the payment scheme. He maintained Weigand in his position as sales representative and paid him substantial commissions after the time when Weigand's services no longer were useful to Rad-O-Lite. When Weigand no longer was useful to Barszowsky and when his continued involvement raised a danger that the conspiracy would be revealed, Manchester, with Barszowsky's advice, dismissed him. Manchester's choice as Rad-O-Lite's new sales representative, John F. Dallas, was a partner of Barszowsky and already was involved in the conspiracy.

The government also offered evidence to show that Manchester allowed Barszowsky to take an active part in facilitating the sales that generated the improper payments. Barszowsky quoted prices on pre-emption devices and pre-emption chassis to customers, arranged for timely payment from purchasers, and obtained loans for Rad-O-Lite when the corporation was short of cash. Manchester made full use of this assistance. He kept Barszowsky informed on sales, met with him often, and attempted to conceal Barszowsky's extensive involvement in Rad-O-Lite's affairs. The government also offered proof of a meeting between Manchester, Barszowsky, and Weigand to discuss Barszowsky's plan to include the pre-emption chassis in the list of required equipment for a PennDOT funding program.

In its case against Rad-O-Lite, the government relied entirely upon its case against Manchester. It argued that Rad-O-Lite was liable for Manchester's involvement.

The defense of Rad-O-Lite and Manchester consisted primarily of Manchester's testimony, in which he denied any knowledge of the bribery agreement and disclaimed any intention to assist Barszowsky in obtaining the payments. He claimed that his sole purpose in all of his dealings with Barszowsky and Weigand was to advance Rad-O-Lite's legitimate business interests. Manchester stated that he hired and maintained Weigand as a sales representative because he valued Weigand's experience in dealing with municipal officials. He eventually dismissed Weigand, he said, because of poor performance. With regard to Barszowsky's extensive involvement in Rad-O-Lite's affairs, Manchester explained that Barszowsky's substantial influence in the area's traffic safety programs made a close working relationship generally necessary. Neither side suggested that Manchester's actions were outside of his responsibilities as vice-president and chief operating officer

or taken for his own rather than Rad-O-Lite's benefit.

The jury found both Rad-O-Lite and Manchester guilty.[2] Throughout the trial, the same attorney had represented both defendants. After the jury rendered its verdict and the court denied defendants' motion for a new trial, Rad-O-Lite retained independent counsel to represent it at the sentencing hearing and on this appeal. The newly appointed counsel moved to strike references to the alias "Pre-Emption Devices, Inc." from the indictment, raising that issue for the first time. The district court denied the motion and sentenced Rad-O-Lite to pay a $5,000 fine.

## II.

Rad-O-Lite's principal objection on appeal is that the joint representation of the corporation and Manchester created a possible conflict of interests for the defense attorney and caused him to disregard the distinct interests of the corporation at trial. Rad-O-Lite argues that the joint representation violated its right to effective assistance of counsel, as guaranteed by the sixth amendment. *See United States ex rel. Hart v. Davenport,* 478 F.2d 203 (3d Cir. 1973).

The government does not argue against the applicability of the guarantee of effective assistance of counsel to a corporate defendant. However, because this issue is fundamental to any resolution of Rad-O-Lite's objection and few courts have addressed it, we choose to consider it explicitly. *See State ex rel. Londerholm v. American Oil Co.,* 202 Kan. 185, 446 P.2d 754, 756 (1968).

The Supreme Court generally has considered issues of the application of constitutional rights to corporations in negative terms: asking whether corporate status should defeat an otherwise valid claim of right. *See First National Bank v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). The sixth amendment describes the class of persons protected by its terms with the word "accused." This language does not suggest that the protection of sixth amendment rights is restricted to individual defendants. *Cf. Armour Packing Co. v. United States,* 209 U.S. 56, 76–78, 28 S.Ct. 428, 52 L.Ed. 681 (1908) (implying that a corporation is an "accused" for purposes of the sixth amendment clause governing the place of jury selection).

Furthermore, an accused has no less of a need for effective assistance due to the fact that it is a corporation. The purpose of the guarantee is to ensure that the accused will not suffer an adverse judgment or lose the benefit of procedural protections because of ignorance of the law. *See generally Powell v. Alabama,* 287 U.S. 45, 68–69, 53 S.Ct. 55, 77 L.Ed. 158 (1932). A corporation would face these same dangers unless the agent representing it in court is a competent lawyer. Thus, the right to effective assistance of counsel is not so peculiarly applicable to individuals that corporations should not be entitled to it. *Cf. United States v. White,* 322 U.S. 694, 699, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944) (corporations may not invoke the privilege against self-incrimination).

Nor can we see how this right is in any manner inconsistent with a corporation's status as a creature of state law. *Cf. Western Turf Ass'n v. Greenberg,* 204 U.S. 359, 363, 27 S.Ct. 384, 51 L.Ed. 520 (1907) (the privileges and immunities clause of the fourteenth amendment is inapplicable to corporations). Consequently, we hold that the guarantee of effective assistance of counsel applies to corporate defendants.

However, Rad-O-Lite did not preserve its sixth amendment objection for direct appeal because of its failure to raise the objection in the district court. In general, this court will consider objections raised for the first time on appeal "only to prevent a manifest miscarriage of justice." *United States v. Grasso,* 437 F.2d 317, 319

---

2. The jury also found Manchester guilty of the § 1962(c) count and one of the mail fraud counts. *See* note 1 *supra.* A different panel of this court has affirmed his convictions. *United States v. Manchester,* 605 F.2d 1198 (3d Cir. 1979).

(3d Cir.1970), *cert. denied,* 403 U.S. 920, 91 S.Ct. 2236, 29 L.Ed.2d 698 (1971).

■ Rad-O-Lite's assertion would seem, by its very nature, to require some exception to the rule demanding an objection at trial. The accused normally relies on its defense attorney to make such an objection. An alleged conflict of interests puts that reliance itself into question. In this situation, penalizing the accused for the failure of its attorney to object at trial would make sense only if we accept the proposition that the responsibility for protecting against conflicts of interests rests entirely upon the accused. Prior decisions have rejected this proposition. The district court bears a substantial responsibility for ensuring that conflicts of interests resulting from joint representation do not deprive the accused of a fair trial. *See Glasser v. United States,* 315 U.S. 60, 69–71, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Dolan,* 570 F.2d 1177 (3d Cir. 1978); *United States ex rel. Hart v. Davenport,* 478 F.2d 203, 211 (3d Cir. 1973).

Some circuits have, nonetheless, refused to notice errors of this type in the absence of an objection at trial. They have preferred that the accused raise the objection in a collateral proceeding under 28 U.S.C. § 2255 (1976), because this course allows the district court to develop a factual record. *United States v. Prince,* 456 F.2d 1070 (5th Cir. 1972); *United States v. Porter,* 431 F.2d 7, 10–11 (9th Cir.), *cert. denied,* 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970). We too have indicated a preference for this course. *See United States v. Garcia,* 544 F.2d 681, 685 n.1 (3d Cir. 1976).

Because a corporation cannot be held in custody, Rad-O-Lite cannot obtain relief under § 2255. However, persons not held in custody can attack a conviction for fundamental defects, such as ineffective assistance of counsel. The mechanism is a motion in the form of the common-law writ of error coram nobis. *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); *Payne v. United States,* 422 F.2d 376 (3d Cir. 1970); *United States v. Steese,* 144 F.2d 439 (3d Cir. 1944). *See also Roth-*

*man v. United States,* 508 F.2d 648, 655 (3d Cir. 1975) (Garth, J., concurring). Courts regularly have allowed corporations to petition for coram nobis. *See New England Furniture & Carpet Co. v. Willcuts,* 55 F.2d 983 (D. Minn.1931); *Murray v. United Zinc Smelting Corp.,* 263 S.W.2d 351 (Mo. 1954).

Therefore, Rad-O-Lite will have an opportunity after the completion of this appeal to raise its objection in the district court. No reason exists for a departure from our general rule against hearing objections raised for the first time on appeal. Consequently, we decline to notice a sixth amendment violation and leave Rad-O-Lite to raise this objection before the district court in a coram nobis proceeding.

### III.

Rad-O-Lite also appeals from the district court's denial of its motion to strike references to "Pre-Emption Devices, Inc." from the indictment. The references appear in the caption to the indictment and in the paragraph that initially identifies Rad-O-Lite. The parties disagree on whether "Pre-Emption Devices, Inc." is in fact a second name of the appellant. Rad-O-Lite contends that this name refers to a separate corporation which was established after the occurrence of all of the illegal activities in this case. The government argues in response that Pre-Emption Devices, Inc., is not a distinct entity but merely a means of carrying on Rad-O-Lite's business under a different name and free of the stigma of the indictment. The district court did not resolve this dispute because it dismissed Rad-O-Lite's motion as untimely.

■ The Federal Rules of Criminal Procedure require that "objections based on defects in the indictment" be raised before trial. Fed.R.Crim.P. 12(b)(2). Failure to make a timely motion constitutes a waiver of the objection, "but the court for cause shown may grant relief from the waiver." *Id.* 12(f). Rad-O-Lite filed its motion to strike several weeks after the completion of the trial and the ruling on motions for a new trial. It made no attempt to show

cause for its failure to file a pre-trial motion. The district court's order, therefore, seems unassailable. *See United States v. Burton,* 525 F.2d 17 (2d Cir. 1975).

Rad-O-Lite argues, however, that a motion to strike may be filed at the completion of a trial when the defendant asserts, as Rad-O-Lite does, that the government has failed to offer proof of either the defendant's use of the name or the relevancy of the name to proof of the crimes charged in the indictment. It relies on cases in which a court has ruled that a defendant may move at the completion of trial to strike an alias on grounds of insufficient proof of either of these two issues. *United States v. Clark,* 541 F.2d 1016 (4th Cir. 1976); *United States v. Addonizio,* 313 F.Supp. 486, 490–91 (D.N.J.1970), *aff'd on other grounds,* 451 F.2d 49 (3d Cir. 1971), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972). We need not consider whether these cases are correctly decided because neither is authority for a rule dispensing with the requirement of a pre-trial motion. In each, the defendant had filed a timely motion to strike, which the district court denied. The procedure that each case contemplates is a renewal of that motion at the end of trial. Thus, the defendants in these two cases, unlike Rad-O-Lite, complied at least formally with the clear requirement of the Federal Rules.

█ Finally, the joint representation of Rad-O-Lite and Manchester does not require reversal of the district court's denial of the motion to strike. Rad-O-Lite does not argue that its interests conflict with Manchester's in any manner relevant to their attorney's filing and arguing a timely motion to strike. In our own review of the record, we find no such possibility. Therefore, with regard to this issue, the joint representation survives scrutiny under this circuit's high standard. *Walker v. United States,* 422 F.2d 374 (3d Cir.), *cert. denied,* 399 U.S. 915, 90 S.Ct. 2219, 26 L.Ed.2d 573 (1970).

## IV.

The judgment of the district court will be affirmed.