GOVERNMENT OF THE VIRGIN
ISLANDS

v.

Antonio ROSADO, Samuel George, Dennis Blyden and Keith Benjamin.

Appeal of Antonio ROSADO, in 82–3069.

Appeal of Samuel GEORGE, in 82–3070.

Appeal of Dennis BLYDEN, in 82–3071.

Appeal of Keith BENJAMIN,
in 82–3072/73.

Nos. 82–3069 to 82–3073.

United States Court of Appeals,
Third Circuit.

Argued Dec. 6, 1982.

Decided Jan. 24, 1983.

Rehearing and Rehearing In Banc
Denied Feb. 25, 1983.

Alexander A. Farrelly (argued), Birch, de Jongh & Farrelly, Charlotte Amalie, St. Thomas, V.I., for Antonio Rosado.

James L. Hymes, III (argued), Charlotte Amalie, St. Thomas, V.I., for Samuel George.

Joseph Bruce Wm. Arellano (argued), Charlotte Amalie, St. Thomas, V.I., for Dennis Blyden.

Michael A. Joseph (argued), Federal Public Defender Dist. of the Virgin Islands, Christiansted, St. Croix, V.I., for Keith Benjamin.

Lewis M. Fischer (argued), Terry M. Halpern, Crim. Div., U.S. Dept. of Justice, Charlotte Amalie, St. Thomas, V.I., for Government of the Virgin Islands.

Before SEITZ, Chief Judge, ADAMS and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The defendants in this direct criminal appeal from the Virgin Islands District Court contend that the trial judge erred in pressing passers-by into jury service after the regularly selected list of prospective jurors was exhausted. We reject the challenge because it was not properly presented in the district court. Moreover, we do not accept defendants' argument that the trial court's sua sponte admission of an exhibit used to refresh a witness' recollection was erroneous. After considering numerous other allegations of error, we conclude that they also have no merit. We therefore affirm the convictions.

After a jury trial, the defendants were each convicted on one count of first degree murder, V.I.Code Ann. tit. 14, § 922(a)(1) (1964), and one count of possessing a firearm during the commission of a crime of violence, V.I.Code Ann. tit. 14, § 2253 (Supp.1981). Each was sentenced to life imprisonment without parole on the murder count and a concurrent five year term on the firearms count.

Antonio "Tampo" Malone was shot to death at approximately 7:00 a.m. on June 4, 1981 as he repaired a tire on his automobile parked near his apartment in the Tutu Highrise Apartment Project in St. Thomas, Virgin Islands. A witness testified that shortly before the shooting, she heard someone say to Malone, "I came to kill you because you are a rat." She looked out of her apartment and saw a masked man outside a beige car parked nearby.

After emptying his weapon at Malone, the gunman went to the beige car, got a second gun from one of the occupants, and returned to fire several more shots into the victim. The gunman then ran back to the car which sped away.

A number of persons supplied details of the crime. The prosecution's principal witness was Miguel Delamos. He testified that on the evening before the shooting, he had seen defendants Antonio Rosado and Keith Benjamin in a beige car parked near Malone's apartment building. The witness had known both defendants for a number of years.

The next day, about a half-hour before the murder, Delamos was walking near Malone's apartment building and saw the same beige car parked nearby. Rosado was in the driver's seat, Benjamin was next to him in the front, and defendant Dennis Blyden was in the back seat. The witness also observed defendant Samuel George seated on the ground not far away.

Delamos went to his apartment but upon hearing shots several minutes later, ran outside and up the street. He saw Blyden and Benjamin, both masked, get back into the beige car already occupied by Rosado. The car then drove away. Delamos also saw defendant George run up the street to his own Kharman Ghia and drive in the same direction as the beige car.

Other witnesses testified to hearing gunshots and then seeing one or two individuals get into a beige car that drove away. Two other witnesses testified that sometime after 6 a.m. on the morning of the shooting they saw three individuals in a beige car parked near Malone's apartment building.

One of these witnesses, Dion Williams, recognized two of the occupants as George and Benjamin. Williams, however, could only identify George at trial and that was when he was recalled to the stand.

Marvin Fahie secured the license plate number of the car he observed the gunman enter immediately after the shooting. The number was that of a beige car rented by a man named Swift on the preceding day. Swift testified that he rented the car at defendant George's request and with George's money because "George said he did not want anyone to know his business." Swift parked the car near Blyden's house and turned the keys over to George.

About five hours after the murder, George took Swift to an area near Blyden's house, and asked him to return the beige car parked there to the rental agency. In response to police questioning the next day, Swift disclosed George's part in the rental arrangements. Two days following the murder, Swift told George about the police inquiry, and George said, "Well, be cool" and "them guys just fishing in."

At noon on the day of the crime, a police officer confronted Benjamin at his place of employment and swabbed his hands to procure a sample for a neutron activation test. Later in the afternoon, another officer saw Blyden and Rosado on the street and swabbed Rosado's hands. Having used his one kit, the policeman asked Blyden to remain there until another kit could be secured. Blyden testified that he waited for 15 minutes and then left. He later went to the police station and offered to submit to the test, but it was never performed.

The samples taken from the defendants' hands were analyzed by the F.B.I. At trial, an expert testified that the neutron activation test revealed traces of antimony and barium on Benjamin's hands in levels indicating that he had either fired a weapon or was very close to one that was discharged. Rosado's test was negative.

All of the defendants presented alibi evidence. Blyden, Rosado and Benjamin testified on their own behalf.

On appeal, the defendants raise a multitude of issues, including contentions that the selection of the jury violated the Virgin Islands' jury selection rules, that the trial judge's sua sponte admission of government exhibit No. 21 was erroneous, that the evidence was insufficient to support the convictions, and that the court should have instructed the jury on second degree, in addition to its charge on first degree, murder. The defendants also contend that the prosecution acted improperly in referring to another pending murder case in which two of the defendants were indicted.[1]

## I

We consider first the challenges to the jury selection procedures used in this case.

The murder trial was widely publicized and the district judge anticipated that more than the usual number of prospective jurors would have to be called. Ninety-four persons were originally summoned, but sixteen were excused. The court then ordered that another one hundred names be drawn from the qualified jury wheel.

By the third day of voir dire, however, there were still not enough prospective jurors to complete the selection process. The court then directed that the marshal sum-

---

1. We have listed the additional contentions filed by the defendants in the appendix to this opinion. We do not consider it necessary to elaborate on them because after a careful review of the record we are convinced they have no merit.

We do not address Benjamin's contentions that his counsel was incompetent but follow our usual procedure in holding that such matters must be resolved in a collateral proceeding brought under 28 U.S.C. § 2255. *See United States v. Frankenberry,* 696 F.2d 239, 241–242 (3d Cir.1982); *United States v. Rad-O-Lite of Philadelphia, Inc.,* 612 F.2d 740, 744 (3d Cir. 1979).

mon additional talesmen from the street. There was no objection to this procedure by the defendants, although on the preceding day counsel for one of the defendants said, "Judge, for the record, I wish to object to the entire jury selection procedure." This statement was made before plans for a "street sweep" were disclosed to counsel.

As the court explained to those jurors who had already been selected, "we still have some more to select, and we've exhausted our panel. So, we had to resort to the procedure of just serving persons with summons to appear in court forthwith. We don't often do that. It's rare that it happens. * * * In our final sweep to get in enough persons, I told the marshal service to make no inquiry, just stop anybody, serve them and bring them in. [W]e normally take our panels from the voting list." However, the court did not require those who were summoned from the street to be registered voters. The defendants contend that the district court's action was both a statutory and a constitutional violation.

Neither the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–74 (1976 & Supp. V 1981), nor the Plan for Random Selection of Jurors of the District Court of the Virgin Islands, V.I.Code Ann. tit. 5, App. V Rules 61–77 (1982), provide for the historically approved practice of resorting to highways and byways in order to secure additional jury panel members. In case of an unanticipated shortage of jurors drawn from a qualified jury wheel, the Act and the Plan provide that the district court may require the marshal to summon additional jurors drawn at random from the general register of voters.[2] 28 U.S.C. § 1866(f); V.I.Code Ann. tit. 5, App. V Rule 76. Because the defendants failed to follow the mandated procedure for presenting their objections to the jury selection process, however, we need not decide if the emergency conditions confronting the trial judge justified his use of the sweep.

Title 28 U.S.C. § 1867(a) provides that before the voir dire in criminal cases begins, the defendant may move to stay the proceedings against him on the ground of substantial failure to comply with the Act.[3] Subsection (d) requires that the motion contain a sworn statement of facts which, if true, would constitute a "substantial failure to comply" with the Act. Subsection (e) states that the prescribed procedures, "shall be the exclusive means" for a challenge to the jury as not being selected in accordance with the statute.

In *Government of the Virgin Islands v. Navarro*, 513 F.2d 11, 18 (3d Cir.), *cert. denied*, 422 U.S. 1045, 95 S.Ct. 2662, 45 L.Ed.2d 698 (1975), we rejected a challenge to the composition of a petit jury array because the defendant had failed to follow the statutory procedure. In that case, an oral objection was made after the prospective jurors had been summoned into court. The only basis for the motion was counsel's unsupported statement that the array did not adequately reflect the Spanish population of St. Croix. We held that this method of attack was insufficient. *See also United States v. Kennedy*, 548 F.2d 608 (5th Cir.), *cert. denied*, 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140 (1977).

In the case at hand, there was not even an oral objection to the use of talesmen selected from passers-by. No challenge was ever raised in the district court. It is indisputable that the statutory procedure for objections was not followed and, consequently, the defendants' contention that the Act was violated must be dis-

---

**2.** The Jury Selection and Service Act provides that summoned jurors may be selected from the voter registration lists, lists of actual voters, or other lists specified in the plan. The Virgin Islands Plan adopted in conformance with the Act provides only for the selection of jurors from "the general register of voters."

**3.** 28 U.S.C. § 1867(a) reads: "In criminal cases, before the voir dire examination begins,

or within seven days after the defendant discovered or could have discovered by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

missed. To resolve any uncertainty, we make explicit what was implicit in *Navarro:* any challenge under the Virgin Islands Jury Selection Plan must conform to the requirements of 28 U.S.C. § 1867.

We need not consider here whether the statute also provides the exclusive means for attacking a constitutional violation in jury selection. *See Navarro*, 513 F.2d at 18 and n. 5. The matter was not raised in the district court and no basis for a constitutional objection was developed in the record. Consequently, under any procedure, there is no ground for finding a constitutional infringement here. *See id.* at 19.

■ The defendants also contend that the trial judge erred in not conducting an individual voir dire of each juror because of the pretrial publicity about the case. On several occasions, we have suggested that the trial judge examine individually and outside the presence of the panel prospective jurors who have read or heard adverse publicity. *See United States v. Jackson*, 649 F.2d 967, 974–76 (3d Cir.), *cert. denied*, 454 U.S. 871, 1034, 102 S.Ct. 341, 574, 70 L.Ed.2d 176 (1981); *United States v. Dansker*, 537 F.2d 40, 54–55 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Although that was not done in this case, we have reviewed the record of the voir dire and find no prejudice to the defendants. After considering the circumstances in this case and the district judge's knowledge of local conditions, we conclude that there was no reversible error in the procedures he followed.

## II

■ Defendant Blyden argues that the trial court erred in admitting Exhibit 21 into evidence. That exhibit was used during the cross-examination of Blyden in an attempt to refresh his recollection and was referred to in closing argument by both prosecution and defense. After the charge to the jury was completed, the trial judge sua sponte admitted the exhibit and sent it out with the jury.

As part of his alibi defense, Blyden testified that he had spent the night of June 3 and part of the morning of June 4 with his girl friend, who was to graduate from a local high school later that month. His girl friend's testimony was corroborative on this point. When asked on direct examination why she remembered the morning of June 4 so clearly, she replied, "[T]his was the first day of baccalaureate practice."

On cross-examination, Blyden testified that his girl friend did not have baccalaureate practice on June 3. In an effort to refresh his recollection, the prosecutor showed Blyden Exhibit 21, an information sheet for prospective graduates prepared by the high school. After looking at it, Blyden said, "Well, as far as I read on this paper, it says so. It says Wednesday, June 3, 1981, nine-thirty a.m. at Williams School, uniform requested." Defense counsel did not move to strike this nonresponsive answer.

During his summation to the jury, the prosecutor, in describing the testimony of Blyden's girl friend, said that Exhibit 21 showed that "there were baccalaureate practices on June 3, not June 4 and 5." Consequently, he suggested that the jury find that the witness had lied.

In his summation, Blyden's counsel also referred to Exhibit 21, stating, "I believe the sheet indicated there was baccalaureate practice on the 3d.... [T]here is no testimony that she was there.... So the first day she went to baccalaureate practice was on the 5th." Actually, the record shows that Blyden's girl friend testified that she went to baccalaureate practice on June 4 and said that was the first day of practice. She also maintained she had been sick on the morning of June 3.

When the court and counsel were discussing the exhibits to be sent out with the jury, Blyden's lawyer said, "I just wanted to make sure that Exhibit 21 isn't sent [out]." The trial judge, observing that the exhibit had not been admitted into evidence, proposed to allow its admission because he believed the jury should have it in light of the closing arguments. The judge disagreed with the government's argument that "there was no baccalaureate practice

on the 4th at all." He decided to send the document out with the jury because "there has been sufficient argument about it."

In the circumstances of this case, we conclude that the district court did not commit reversible error when it admitted this document sua sponte. Exhibit 21 was not in the record when the prosecutor closed to the jury. Therefore, it was the witness' testimony and not the document that was evidence in the case. The prosecutor should not have commented on anything in the schedule that had not been mentioned by Blyden in open court. *See United States v. LeFevre*, 483 F.2d 477, 479 (3d Cir.1973). Nevertheless, defense counsel did not object to the prosecutor's comments. Instead, he chose to give his version of Exhibit 21 and its effect on the alibi testimony. Because the contents of the document were fully aired to the jury by both parties, we cannot say that the trial judge committed reversible error in admitting the exhibit to clarify the matter for the jury.

### III

■ The defendants strongly maintain that the evidence was insufficient to convict them. They point to their alibis, corroborated by a number of persons, and attack the testimony of the prosecution's principal witness, Miguel Delamos. After a review of the entire trial record in the light most favorable to the government, as we are required to do in the posture of this case, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), we determine that the verdict has ample support. It was the function of the jury to assess the credibility of the defendants' alibi witnesses and those persons called by the prosecution. The jury made its determination adversely to the defendants.

The defendants direct our attention to evidence that Delamos received $100 from a policeman after giving a statement, and that after trial the government was to give him a one-way plane ticket from the Virgin Islands along with some spending money. Delamos explained that he had signed a receipt for the money at the request of the police. The witness said that he had been given the money by an officer who knew him, but not in exchange for testimony or a statement.

The government's agreement to give the witness a plane ticket to leave the Virgin Islands was made at the request of the witness' mother. Moreover, Delamos testified that two months before the trial Blyden told him to "be cool." Delamos also stated that Benjamin said that "he heard that I [Delamos] was speaking about them, ratting about them, so he tell them the word is out on me; if I rat, I'll die." The jury was free to find that the promise of the plane ticket was prompted by these threats.

The fact that the witness received money and the promise of a plane ticket from the government was properly brought to light at the trial. This revelation does not make the witness' testimony incredible. All the information was given to the jury for its appraisal and despite any potential adverse implications, it chose, as is its right, to credit Delamos.

Moreover, Delamos' account of the murder was corroborated in several respects. One witness testified that he saw George and Benjamin at the scene of the crime on the morning of June 4 and identified George at trial. George was also placed at the scene of the crime by another witness.

The car rented on George's behalf was linked to the crime by the testimony of Fahie as to the license plate number as well as through other witnesses by its color. Also supporting Delamos' testimony was the result of the neutron activation test which was consistent with Benjamin having been close to a gun when it was discharged.

Thus, although Delamos was the principal witness against the defendants, he was not the only one, and he was corroborated in important aspects of his testimony. The case was clearly one for the jury and we may not disturb its verdict.

### IV

■ In advance of trial, the defendants persuaded the district court that the prose-

cution should not be allowed to produce evidence that Malone was to be a government witness against defendants Blyden and Benjamin in another pending murder case. That case involved the death of "Kojak" Williams. The court concluded that the evidence was so prejudicial as to outweigh its probative value in the case at hand. It may be that the court erred in excluding this evidence because it supplied a motive for Benjamin and Blyden to execute Malone—the fact that he was "ratting on them." Nevertheless, the ruling favored the defendants and is not at issue now.

The defendants assert that the testimony that Malone was killed because he was "a rat" would lead the jury to associate the two cases. On a similar ground, the defendants also attack the statements in summation by one of the prosecutors explaining gaps in the evidence. The prosecutor had remarked that the case was not like "Kojak" on television, "where we find the physical evidence always in the car." We find no merit to the defendants' contentions. No reference was made to the Williams' case. The connection that the defendants seek to make between the Williams' case and the statements at issue is far too attenuated to have validity.

## V

■ The district judge refused to charge on second degree murder because there was no conflict of evidence as to the existence of the elements of deliberateness and premeditation.[4] As he explained to counsel, "[I]f the jury believes that someone, with a man on the ground shot, fired some shots into his body and into his head, if they believe that is how he died, it is very difficult for me to say that any reasonable person can say there was not wilfulness, not deliberation and premeditation."

We agree with the trial judge's appraisal of the record. To paraphrase our earlier decision in *Government of Virgin Islands v. Carmona,* 422 F.2d 95, 100 (3d Cir.1970), the jury in this case could not have harbored a reasonable doubt as to intent which would have precluded a conviction of first degree murder, and at the same time find that the defendants had acted with malice aforethought. There was no evidence in the case justifying submission to the jury on any degree of murder other than first degree.

After careful review of the entire record, we find no reversible error. Accordingly, the judgment of the district court will be affirmed.

## APPENDIX

## ADDITIONAL CONTENTIONS RAISED BY THE DEFENDANTS.

*BENJAMIN*

(1) Benjamin's motion for a new trial should have been granted because the admission of witness Fahie's identification of Benjamin's photograph from a photo array was prejudicial error.

(2) The penalty statute for first degree murder, precluding the possibility of parole, is unconstitutional in that it violates the Eighth Amendment's prohibition against cruel and unusual punishment.

*BENJAMIN (PRO SE)*

(1) Benjamin was denied due process of law when the trial court admitted identification testimony that was suggestive and unreliable.

(2) Benjamin was denied due process of law when the trial court admitted out of court identifications that were "suggestive and conducive to irreparable mistaken identification."

(3) Benjamin's Sixth Amendment rights were violated "through the out-of-court confrontation on identification" when Benjamin "was in custody at the time

4. Under the law of the Virgin Islands, murder is "the unlawful killing of a human being with malice aforethought." V.I.Code Ann. tit. 14, § 921 (1964). A "willful, deliberate and premeditated killing" is first degree murder, as is a "murder" committed in the perpetration of certain felonies. *Id.* § 922(a). "All other kinds of murder are murder in the second degree." *Id.* § 922(b).

of the confrontation so as to render the identification a critical stage of the proceedings" entitling defendant to the assistance of counsel.

(4) Benjamin was denied due process of law and a fair trial by the prosecutor's failure to carry out a court order that a witness be shown a profile photograph of the defendant.

(5) Benjamin was denied due process of law and a fair trial "through the failure [of a witness] to identify [the defendant] at the first time he confronted him despite a suggestive line-up."

(6) Benjamin's Sixth Amendment rights were violated and he was denied due process of the law and a fair trial through a confrontation between a witness and a police officer, during a recess in the trial and with respect to the identification of defendant.

(7) Benjamin was denied due process of law and a fair trial through the perjured testimony of two witnesses and the prosecutor's failure to prevent such testimony.

(8) Benjamin was denied due process of law and a fair trial by the prosecutor's suppression of favorable evidence.

(9) Benjamin was denied due process of law "through the failure of the prosecutor's case to convince a rational trier of the fact[s] beyond a reasonable doubt" of defendant's guilt.

(10) The trial court denied Benjamin his right to effective assistance of counsel by failing "to grant a motion for continuance to enable counsel to prepare a defense for his client."

(11) Benjamin was denied due process of law and a fair trial through the admission of inconsistent statements in violation of Fed.R.Evid. 613(b).

(12) Benjamin was denied due process of law and a fair trial by the admission of the neutron activation analysis test which was irrelevant and inadmissible under Fed.R.Evid. 402.

*BLYDEN*

(1) The trial court erred in allowing the prosecution to improperly refresh witness Haynes' recollection.

(2) The trial court erred in permitting evidence of Rosado's prior conviction without first determining that its probative value outweighed its prejudicial effect.

(3) The trial court erred in denying the motion for acquittal based on the Government's failure to establish an element of the offense of possessing a firearm during the commission of a crime of violence.

*GEORGE*

(1) The trial court erred in instructing the jury on the consideration that may be given to an exculpatory statement later shown to be false.

(2) The trial court erred in refusing to suppress the extra-judicial photographic identification of witness Eloi.

(3) The defendant was denied a fair trial by prosecutorial misconduct in the Government's injection of inadmissible evidence into the trial record, its failure to correct false testimony, and its improper comments about defense testimony.

(4) The trial court erred in not granting George's motion to sever.

(5) The trial court erred in not allowing George an additional peremptory challenge following the excusal of a juror.

(6) The imposition of life imprisonment without parole is inconsistent with the Eighth and Fourteenth Amendments of the United States Constitution and Section Three of the Revised Organic Act of the Virgin Islands.

*ROSADO*

(1) The trial court abused its discretion in failing to give the defense an additional peremptory challenge after it excused a previously seated juror.

In addition to these contentions, Blyden and Rosado adopted arguments of other defendants. Pursuant to Fed.R. App.P. 28(i),

(a) Blyden's brief addressed the contentions of Blyden and Rosado. It also adopted the brief of Rosado, the argument of Benjamin relating to "preventing or dissuading witnesses from attending trial," and George's arguments numbered (4), (5) and (6).

(b) Rosado adopted Blyden's brief, the argument of Benjamin noted in (a) and George's argument numbered (6).