Edward L. GARDNER, Jr.,
Movant-Appellant,

v.

STATE of Missouri,
Respondent-Respondent.

No. 11427.

Missouri Court of Appeals,
Southern District,
Division One.

June 24, 1980.

Motion for Rehearing and/or Transfer
Denied July 24, 1980.

Application to Transfer Denied
Sept. 9, 1980.

Blythe Crist-Brown, Wear & Wear, Springfield, for movant-appellant.

John Ashcroft, Atty. Gen., Michael Elbein, Paul R. Otto, Paul Spinden, Asst. Attys. Gen., Jefferson City, for respondent-respondent.

FLANIGAN, Chief Judge.

Movant Gardner appeals from a denial, after evidentiary hearing, of his Rule 27.26[1] motion to set aside a judgment and sentence for selling marijuana (Count I) and selling salt of amphetamine (Count II). The jury trial which resulted in the conviction ended on January 27, 1976, and the conviction was affirmed by this court on November 10, 1977. *State v. Gardner*, 558 S.W.2d 395 (Mo.App.1977).

Movant asserts that he was entitled to relief (and the trial court erred in denying same) because the services of Daniel Letsch, movant's attorney at the jury trial, were inadequate in the following respects: (a) Mr. Letsch failed to file a motion for separate trials of the two counts; (b) Mr. Letsch failed to call one Swearingin as a defense witness; (c) Mr. Letsch failed "to challenge the jury venire in that the failure to challenge after *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) deprived appellant of his constitutional right to a fair and impartial jury because Missouri law systematically excluded women under Article I, Section 22(b) of the Missouri Constitution of 1945."

With regard to prong (a), attorney Letsch, called by movant, testified that he and movant discussed the advisability of filing a motion for separate trials and, as a matter of trial strategy, concluded not to do so. Mr. Letsch said, "We thought that the doubt we might create as to the allegations of Count I would also cast doubt on Count II." Movant, testifying in his own behalf, said, "I insisted upon attorney Letsch severing the two counts and Letsch told me it could not be done." The trial court, in its findings of fact, stated that it "believes the testimony of Letsch and finds the failure to

request separate trials was a matter of trial strategy."

■ In this proceeding appellate review is limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous. Rule 27.-26(j). The action of the trial court in denying relief on prong (a) was not clearly erroneous. See *Barber v. State*, 564 S.W.2d 914, 917[8] (Mo.App.1978); *Sweazea v. State*, 588 S.W.2d 244, 246[6] (Mo.App.1979) (and authorities there cited).

With regard to prong (b), attorney Letsch testified that he and movant discussed "whether Swearingin was a credible witness and whether he would help or hinder" and concluded not to call Swearingin. Movant testified that he wanted Swearingin called as a witness. Movant admitted however that he did not know whether Swearingin's testimony would have been "valuable to my defense." Movant also admitted that, prior to the trial, attorney Letsch had provided movant with a list of possible witnesses, with the request that movant circle the names of the witnesses he wanted to be called. Swearingin's name was on the list. Although movant circled some names he did not circle Swearingin's.

The trial court found that movant did not instruct attorney Letsch to call Swearingin as a witness and that the decision not to call him was a matter of trial strategy. The action of the trial court in denying relief on prong (b) was not clearly erroneous. See *Taylor v. State*, 586 S.W.2d 452[2] (Mo.App. 1979) and authorities there cited.

With regard to prong (c), attorney Letsch testified that, prior to the jury trial, he did not file any motion challenging the jury selection process nor did he do so during the trial itself. According to Letsch, movant did not request such a challenge. Letsch testified that he did not conduct any legal research concerning the constitutionality of the jury selection process. Letsch testified that the array was "quite even as between men and women." The court records show that out of 40 names on the array 23 were

---

1. All references to rules are to Missouri Rules of Court V.A.M.R.

feminine names. The jury itself consisted of eight women and four men and the foreman was a woman.

In a Rule 27.26 proceeding movant "has the burden of establishing his ground for relief by a preponderance of the evidence." Rule 27.26(f).

■ A defendant who seeks postconviction relief on the ground of ineffective assistance of counsel has the burden "to establish a serious dereliction of duty on the part of his counsel which materially affected his substantial rights. . . . The dereliction should be of such grave nature as to obviously result in a miscarriage of justice." *Fitzpatrick v. State*, 578 S.W.2d 339, 340[3] (Mo.App.1979). *Fitzpatrick* points out that it is not sufficient for movant to show that counsel failed to perform some duty. Movant "must also establish that the failure actually prejudiced the defense." *Fitzpatrick*, supra, at 341[8]. To similar effect see *Cox v. State*, 572 S.W.2d 631, 633[3] (Mo.App.1978).

In *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979) the Court dealt with the Missouri system, based on Mo.Const. Art. 1, § 22(b) and § 494.031(2) RSMo 1978, which provided an automatic exemption from jury service for any woman requesting not to serve. The Court said, 99 S.Ct. 666, "Today we hold that such systematic exclusion of women that results in jury venires averaging less than 15 percent female violates the Constitution's fair-cross-section requirement." The Court also held that in order to establish a prima facie violation of the fair cross section requirement (of the Sixth and Fourteenth Amendments) defendant must show: (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury selection process.

The Court also held that once a defendant has made the prima facie showing of an infringement of his constitutional right to a jury drawn from a fair cross section of the community, the state has the burden of justifying this infringement by showing attainment of a fair cross section to be incompatible with a significant state interest.

In *State v. Thomas*, 596 S.W.2d 409 (Mo. banc 1980) there was a direct appeal by a criminal defendant who had been convicted in Vernon County. The defendant asserted error in impaneling the jury "because the jury selection statute then governing systematically excluded women and that his panel was not therefore representative of the community." The supreme court, in rejecting defendant's contention, said, "To invalidate a jury verdict on the basis that the jury was improperly impaneled, there must be a showing of unconstitutional discrimination arising out of systematic exclusion." The court pointed out that defendant adduced no *evidence* in support of his contention. The court also stated, "The record contains nothing with respect to the number of women available for service in the county, the number selected, or the number who may have chosen not to serve."

The instant record, with respect to movant's jury trial in Greene County, contains no showing with respect to the number of women available for service in the county or the number (if any) who may have chosen not to serve. The record *does* show that more than half of the array were women and more than half of the jury ultimately selected were women.

The trial court, in its findings, stated that "The jury panel in movant's trial was reasonably representative of the community so far as the male/female ratio was concerned. Indeed movant made no effort to show otherwise. . . . Movant failed to demonstrate any *Duren* defect. There being no defect, it follows there could be no objection for counsel to make and no motion for counsel to file."

Neither the record in the jury trial (which was admitted as an exhibit in the motion hearing) nor the record in the motion hearing contains evidence that would satisfy

elements [2] and [3] of the prima facie violation of the fair cross section requirement which, under *Duren,* defendant must show. Such factual deficiencies have been fatal to complaints, made by defendants on direct appeal from their convictions, that women were impermissibly excluded from the jury under the *Duren* doctrine. *State v. Kalna,* 595 S.W.2d 299 (Mo.App.1979); *State v. Montjoy,* 587 S.W.2d 624 (Mo.App. 1979); *State v. Mears,* 588 S.W.2d 519 (Mo. App.1979); *State v. Vaughn,* 596 S.W.2d 48 (Mo.App.1980).[2]

In *Tollison v. State,* 556 S.W.2d 455 (Mo. App.1977) movant, in a Rule 27.26 proceeding, claimed that counsel was ineffective in failing to file a motion to suppress. The court pointed out that in view of certain conceded facts, such a motion would have been without merit and that counsel could not be found to be ineffective in the constitutional sense for failing to file a nonmeritorious motion.

Federal cases involving claims of ineffective assistance of counsel, based on failure to file motions or make objections, are collected in 26 A.L.R.Fed. 218, 274. In most of those cases the courts held, upon an evaluation of the circumstances presented in the light of the applicable test of effective representation, that the representation in question was not ineffective. In *U.S. v. Hines,* 470 F.2d 225 (3rd Cir. 1972) cert. den. 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703, the court said, l.c. 232, "Effective assistance does not demand that every possible motion be filed, but only those having a solid foundation." That language was quoted with approval in *U.S. v. Swinehart,* 617 F.2d 336, 341 (3rd Cir. 1980) and in *U.S. v. Grismore,* 546 F.2d 844, 850 (10th Cir. 1976).

■ The record fails to show that in Greene County the system of calling venires from which juries are selected was such that the representation of women therein was not fair and reasonable in relation to the number of women in that county. Women were not under-represented on defendant's array or jury. It could hardly be

said that movant proved an under-representation due to systematic exclusion of women in the jury selection process when there was no such under-representation at all.

The action of the trial court in denying relief on prong (c) was not clearly erroneous.

The judgment is affirmed.

TITUS, P. J., and GREENE and PREWITT, JJ., concur.

---

**2.** Cases arising in Jackson County may receive different treatment. See *State v. Barnett,* 584 S.W.2d 617 (Mo.App.1979); *State v. Coleman,* 582 S.W.2d 335 (Mo.App.1979).